OVERTON, *et al.*, Respondents, *vs.* JOHNSON, *et al.*, Appellants.

1. A county court has jurisdiction to order a reservation of the personal, and a sale of the real estate of a testator, to pay debts, notwithstanding the testator's will may direct that all his debts shall be paid out of the "personal effects of his estate." However erroneous the order may be, a sale under it is not *void*, and cannot be questioned in a collateral proceeding.
2. *It seems*, that the accounts, lists, inventories and appraisements, which the statute requires to be filed with a petition for the sale of a decedent's real estate, are not necessary to give the court jurisdiction, and that a failure to file them would not render the sale void.
3. The objection that the order of notification to persons interested was made at a time when no term existed by law, and required their appearance at a time when no term could exist by law, will not prevail, unless these defects are shown affirmatively; the statute gives county courts power to change the terms fixed by law.
4. In a proceeding for the sale of a decedent's land, it is not necessary that guardians *ad litem* should be appointed for minor heirs.

### Appeal from Jackson Circuit Court.

*Napton* and *Wood*, for appellants. It is well settled that a sale under a judgment of a court having jurisdiction of the person, and of the subject matter in controversy, carries the title, however erroneous and irregular its proceedings may be. *McNair* v. *Biddle*, 8 Mo. Rep. 264. 9 ib. 124. Orphan's courts, or courts having testamentary jurisdiction, by whatever

name called, where they are courts of record, and their proceedings subject to revision by the highest appellate tribunals, are fully within the protection of this principle ; and a proceeding of such courts in relation to the sale of the lands of a testator or intestate, in states where such sales are permitted by law, is regarded as *in rem,* and likened to admiralty proceedings, and a sale under their judgments carries the title, if the court has jurisdiction of the subject matter adjudicated on. *Grignon's lessee* v. *Astor,* 2 Howard, 335. *McNair* v. *Hunt,* 5 Mo. Rep. 309. *McPherson* v. *Cunliff,* 11 S. & R. 460. *Day* v. *Kerr,* 7 Mo. Rep. 8 Watts, 417. In this case, it was shown that there was a publication according to law. The omission to file the inventories, &c., required by law, does not affect the question of jurisdiction, and consequently cannot shake the title of the purchaser. The final judgment of the court ordering the sale raises the presumption, so far as the subject arises collaterally, that all these preliminaries have been complied with.

A cause is *coram judice,* whenever the petitioner presents such a case as authorizes the court to deliberate and act. The subsequent movements of the court are the exercise of jurisdiction. Whether the provisions of Overton's will presented any obstacles to the exercise of its jurisdiction, in this case, was a question of fact and law, upon which the court, in the exercise of its jurisdiction, had to pass ; and whether decided rightly or otherwise, does not concern the purchaser at the sale. But the court construed the will correctly. The necessity of selling either land or slaves was not within the contemplation of the testator, and he indicates no choice between them.

The second order was a continuation of the first, and not a new proceeding, requiring a second petition, order of publication, appraisement, &c. *Huckle and wife* v. *Phillips,* 2 S. & R. 7. 11 S & R. 429.

*Hicks,* for respondents. The orders of the county court could not divest the respondents of their property, unless the

requisites of the law were substantially complied with. The county courts are courts of limited jurisdiction. They are creatures of the statute, and are authorized by the statute to do certain acts, after certain formalities have been complied with. The pre-requisites of the statute must be strictly complied with before such courts obtain any jurisdiction over the subject matter. *Bloome* v. *Burdick,* 1 Hill, 130. *Borden* v. *Fitch,* 15 J. R. 121. *Bigelow* v. *Stearns,* 19 J. R. 39. *Miller* v. *Martin,* 19 J. R. 7. *Dakin* v. *Hudson,* 8 Cow. 221. *Jackson* v. *Collins,* 3 Cow. 90. *Denning* v. *Corwin,* 11 Wend. 647. *Messenger* v. *Kintner,* 4 Binney, 97. *Smith* v. *Rice,* 11 Mass. 507. *Proctor* v. *Newell,* 17 Mass. 91. 6 Wheat. 119. *Jackson* v. *Esty,* 7 Wend. 20 Wend. 241. *Jackson* v. *Shepherd,* 7 Cow. 88. *Williams* v. *Peyton,* 4 Cranch. 6 S. & M. 259. *Knox* v. *Jenks,* 7 Mass. *Thomson* v. *Brown,* 16 Mass. 174. 5 Pick. 140. 15 Mass. 312. The cases of *Jackson* v. *Robinson,* 4 Wend. 436 ; *Jackson* v. *Crawford,* 12 Wend. 533 ; *Perkins* v. *Fairfield,* 11 Mass. 227, and *Leavitt* v. *Harris,* 7 Mass. 144, may seem to militate against this doctrine ; but, upon close examination, they do not, but are rather confirmatory of it. The presumption that all the pre-requisites of the law have been complied with, certainly does not arise in this case, when, by the appellants' own showing, they have not been. 4 Binney, 105.

The county court had no jurisdiction to order a sale of the land at the February term, 1844. No continuance of the proceeding had been made to that time. Another petition and order and notice were at least necessary to the validity of the sale.

The notice of publication was not sufficient. It notified all persons interested in the estate to appear " on the first Monday of June next" and show cause, &c., but did not state where, or before what court or what term of the court. The statute requires the parties interested to be notified to appear at the next term of the court. Now the law appoints four

terms a year, to be holden on the first Mondays in February, May, August and November. The county courts may alter their statute terms by giving such notice thereof as to them may seem expedient; but it does not appear that the county court of Jackson county ever altered the statute terms of holding their courts; the contrary appears from the record in this case. The petition was filed April 4th, and the notice was to appear on the first Monday in June thereafter, and the case was continued until the first Monday in June. Now neither April nor June were statute terms of the court, and the respondents could not be notified to appear at any but the next statute term, nor could the proceeding be initiated at any other than a statute term.

The court had no jurisdiction to order a sale, for the reason that two of the respondents were minors and no guardians *ad litem* were appointed for them. 4 Binney, 103. *People* v. *Utica Insurance Company*, 15 J. R. 379.

The sale was void for the reason that the will of the testator directed his debts to be paid out of his personal property. 1 Coxe (N. J.) Rep. 210. 6 Halst. (N. J.) Rep. 145. *Smith* v. *Rice*, 11 Mass. 507. 15 Peters, 111.

GAMBLE, Judge, delivered the opinion of the court.

This was an action for the recovery of the possession of a tract of land, in Jackson county, brought by the plaintiffs as the children of Jesse Overton, deceased, who are here respondents, against Johnson and Dittman, who are the appellants.

The case, as presented on the record, shows the title of the parties to be as follows: Jesse Overton died seized of the premises in controversy, having first made his will, whereby he directed that his debts should be paid out of his personalty, and ordered certain portions of his personal chattels to be sold, and the remainder to be kept on the farm for the use of his wife and children. The real estate was, by the will, to be equally divided among his children when the eldest became of

29—VOL. XVII.

age. The testator left a number of slaves and considerable real estate. The executors presented a petition to the county court, alleging that the personal effects which they were directed by the will to sell, had been sold, and that they were insufficient to pay the debts of the deceased, and praying that the slaves might be reserved from sale, and the real estate sold for the payment of debts. This petition, on its face, professed to state the amount of money collected and distributed, the amount of assets of the estate, the amount of debts allowed against the estate, and also stated that there were other debts not yet allowed, and exhibited a list of the lands belonging to the estate. Upon the exhibition of this petition, the county court, at what is called the April term, made an order directing that all interested in the estate should be notified that, unless they appeared and showed cause to the contrary on the first Monday in June next, an order would be made for the reservation of the slaves and the sale of the real estate, to satisfy the debts of the estate. This order recites that the executors had presented their petition for the reservation of the slaves, and the sale of the real estate, " accompanied by a true account of their administration, a list of debts due to and by said decedent and remaining unpaid, and an inventory of the real estate and the remaining personal estate, with its appraised value, and all other assets in their hands, verified by the affidavit of said executors." The order further directs, that notice of the application " be published in some newspaper published in this state, for six successive weeks, and this cause is continued until the first Monday in June next." At a term called the " June term," the court, on application, continued " the petition of the executors until the first Monday of July next." At a term called " the July term," the court, on motion of the petitioners, " continued the cause until the next August term of the court." At neither of these terms was there any proof of the publication of the notice to the persons interested in the estate. At the August term, an order was made for the reservation of the slaves and the sale of certain portions of the real estate. The

execution of the order of sale, thus made, was postponed, by orders of the court, for one or two terms, and after the sale had been made, the executors presented another, stating that the sales made were insufficient to satisfy the debts of the deceased, and praying for an order to sell other parts of the real estate. This petition was not accompanied by any account of the condition of the estate, nor was any order for notice made by the court; nor does it appear that any written report was made of the proceedings of the executors, under the previous order of sale. Upon this last petition, an order was made for the further sale of real estate, and under this order, the property now in question was sold to Jacob Johnson, to whom the property was conveyed. The executors made one report, embracing all their proceedings, under the different orders of sale, which report was confirmed by the court.

The objections to the proceedings which resulted in the sale and conveyance of the property, present the points which have been discussed at the bar, and are to be decided by the court. As this action for the recovery of the possession of the property, rests upon the ground that no title passed to the purchaser by the sale and conveyance made by the executors, we look for such defects as will render the proceedings void.

1. It is first urged that the county court had not jurisdiction of the cause, so as to order a reservation of the slaves and the sale of the estate, in order to pay the debts, when the will directed that all the testator's debts should be paid " out of the personal effects of his estate." In order to determine the question of the jurisdiction of the court, we do not look to the provisions of the will, but to the statute which confers the jurisdiction, and if we find a jurisdiction there conferred, which embraces all cases in which application may be made for the reservation of personalty and the sale of real estate, the provisions of the will may furnish conclusive objections to the exercise of the power in the given case, but do not take away the power itself. The jurisdiction exists independently of the will, by force of the statute. In the present case, the testator di-

rected the sale of a small part of his personal effects, and made a disposition of the remain er in the will. The sale of the property thus disposed of, would have been contrary to the expectation of the testator, although he might have preferred that to a sale of the realty. Whether the charge of the debts upon the personalty was an absolute charge that, in law, required the executors, in executing the will of the testator, to exhaust that fund before resort ng to the real estate, was a question that the county court was to decide; but in order to decide it, there must be a case presented in a form that would bring the question before the court. When it decided, however manifest the error of the decision may have been, it was acting upon a subject over which it possessed jurisdiction, if the statute is comprehensive enough to include all applications by executors for the reservation of personalty. The statute is in these words : " *If any executor or administrator or other person interested in any estate* file a petition, setting forth the facts, describing the real and personal estate, and praying that the personal estate be reserved, and real estate be sold for the payment of debts, the same steps shall be taken and the same proceedings and publication had, as above directed, upon a petition to sell real estate for the payment of debts, and the court may order that the whole or any part of the personal estate be reserved, and the real estate, or any part of it, may be sold at public or private sale." Revised Code of 1835, p. 52, sec. 14. This section allows the court to exercise the power, and to make the order, not merely on the application of an executor or administrator, but on the application of any person interested in the estate, and the power is intended to be exercised in cases where, without such order, it would be the duty of the executor or administrator to sell the personalty, and not the real estate. For the purposes of jurisdiction, there is nothing in the statute to restrict its general terms, because of any provisions in the will; and whenever jurisdiction is acquired, its erroneous exercise will not render the proceedings and judgment of the court void.

Overton et al. *v.* Johnson et al.

2. It is next urged that the court had not jurisdiction, because the petition was not accompanied by the accounts, lists, inventories and appraisements which the statute requires. The eighth section of article 3 of the administration law, in force when these proceedings were had, (Revised Code of 1835, p. 52,) directs that " if any person die, and does not leave sufficient personal estate to pay his debts, the executor or administrator shall file a petition to the county court, stating the facts, and praying for the sale of real estate or so much thereof as will pay the debts." The next section provides, " such petition shall be accompanied by a true account of his administration, a list of the debts due to, and by the deceased, and remaining unpaid, and an inventory of the real estate, and of the remaining personal estate, with its appraised value, and all other assets in his hands, the whole verified by the affidavit of the executor or administrator." The section of the statute in relation to the reservation of personal and sale of real estate to pay debts, refers to the sections just copied for the mode of proceeding. This objection to the jurisdiction of the county court is not new in this court. In the case of *Frye* v. *Kimball*, decided in St. Louis, this question was discussed. The case is not reported, and since the time of the decision, two of the judges of the court have left the bench, and their places have been supplied by others ; so that no certain reference can be made to the principles there stated. (1) In some of the states, and particularly in New York, it has been laid down and enforced as a settled principle of law, in relation to sales under the orders of their surrogates, that there is to be shown a strict compliance with all the requirements of the law, in order to pass the title to land, and many of the cases show an astuteness in the detection of defects which must have the effect of shaking confidence in such sales. On the other hand, there are decisions of high courts, even as high as the Supreme Court of the United States, which apply very liberal principles in

(1) Since this opinion was written, the case of *Frye* v. *Kimball* has been reported, 16 Mo. Rep. 9.

sustaining such sales. *Grignon's lessee* v. *Astor*, 2 Howard, 335. If we examine our own statute, to determine whether the court has jurisdiction, we ascertain that the administrator, executor or other person, who desires the action of the court, files a petition, and then there *is* a direction that the petition shall be accompanied by certain accounts, inventories and lists. The petition asks for the action of the court; the other papers, which are to accompany the petition, are intended to give evidence to the court of the necessity or propriety of the action which the party seeks in the petition. The action of the court is upon the petition, and consists in granting or refusing its prayer. Now it is not believed that, upon any reasonable grounds, the jurisdiction of the court can be made to depend upon the fact, that the petition is accompanied by all the accounts and other exhibits directed to be filed. It might as well be contended that, as the letter of the statute requires the account to be " a true account of the administration," a defective or false account would prevent the jurisdiction from attaching. It is true that the statute directs that, " when such petition and such accounts, lists and inventories shall be filed, the court shall order that all persons interested in the estate be notified," &c. ; but this provision is only designed *to* carry out the direction of the previous section, and does not affect the question of jurisdiction. The jurisdiction is acquired by filing a petition praying the court to do an act or make an order, which, under the statute, the court *is* competent to do. Whether the petition is in proper form, or sets forth sufficient facts, or is accompanied with the proper evidence, the court will decide in the exercise of its jurisdiction. Many of the decisions, in other states, justify the extreme strictness with which the proceedings in those tribunals are regarded, by considering them as inferior courts, of limited and special statutory jurisdiction, where the jurisdiction must be shown, and the proceedings must be in strict conformity to the statutes under which the courts are organized. The proceedings of such courts are also considered as divesting the estates of heirs, when land *is* sold under their

orders for the payment of an ancestor's debts, and this is regarded as an additional reason for requiring a strict compliance with the law. Under our judicial system, these courts, although statutory, are required by the constitution to be established. Constitution, art. 5, sec. 12. They are courts of record. Revised Code of 1835, 157, sec. 18. An appeal lies from their order for the sale of real estate. Revised Code, 63, sec. 1. They are, then, in no other sense, inferior tribunals, than are other courts, whose judgments may be reviewed by a court of appellate jurisdiction. In the present case, however, this examination of the character and power of these courts, need not be further continued; for the question which is raised, as to the jurisdiction of the county court, when proper accounts were not filed, does not properly arise. The order which was made by the county court recites, that the executors presented their petition, and that it was accompanied by the accounts, lists and inventories, which the statute required to be filed; and in the body of the petition, the general amounts of the different lists and inventories are stated.

3. It is next objected to the proceedings, that the order made by the county court, on the presentation of the petition, for the notification of persons interested, was made at what is called the April term, when no such term existed by law; and required their appearance on the first Monday in June, when no such term could possibly have existed under the statute, as the terms of the county courts were required to be held once in three months. It may be a sufficient answer to this objection, as it is presented on this record, that it does not appear that the court may not have changed the terms as they were fixed by law, under the power which the statute conferred upon them. It is undoubtedly true, that when an order is made for the notification of parties interested in an estate, to appear and show cause against the prayer of the petition, the statute requires that the notice shall be for the first day of the next term of the court; but this record does not show that the then next regular term of the court may not have commenced on the first Monday

in June. Whether, then, any defect in the order would be available to the parties now impeaching the sale or not, the defect alleged is not shown on this record. In *Grignon's lessee* v. *Astor*, the record from the court which ordered the sale, showed no order for the notification of the parties interested in the estate, although the statute of Michigan required such order to be made, yet the court held that the want of such order did not affect the validity of the sale. It is not necessary, in this case, to say whether we are prepared to go so far under our statute.

4. Another objection is made, because the children of Overton were minors, and no guardians were appointed. The statute makes no provision for the appointment of guardians *ad litem*, in a proceeding for the sale of land, nor does it provide, that the fact that persons interested in the estate are minors, shall, in any manner, affect the course to be pursued. The real estate of intestates, whose heirs may reside in distant parts of the Union, is to be sold for the payment of their debts, in the same manner, and under the same proceeding that is directed when the heirs reside here; and in neither case are they named in the record, or their particular interest noticed. The effect of the proceeding, when the statute is complied with, is to vest the title of the property in the purchaser, as it was in the deceased at the time of his death. In this state, all property, real and personal, which is left by a debtor at his death, is subjected to the payment of all his debts, without regard to their dignity, as specialty or simple contract debts, and the application of the assets to this object, is made through our administration act, by the court having probate jurisdiction. While the title to real estate may be said to descend to the heir immediately on the death of the ancestor, such estate is subject to be applied to the payment of debts, in the mode and by the proceeding prescribed by the statute. In the hands of the heir, the title is subject to this power to be exercised by the court. If the statute, then, directs a general notice to all interested, to be published, and authorizes the sale upon proof of such

publication, we are not justified in requiring that, where there are minors interested, as is most generally the case, the record shall show that guardians were appointed for the minors. An infant may be bound by a statute, unless expressly excepted, and so may be bound by a proceeding under a statute like the present. It has been thought proper to notice the most prominent objections which, in the argument of this case, were made to the proceedings of the county court of Jackson county, although the decision of the Circuit Court, upon the trial of this case, was made upon a single point, which was, "that the county court of Jackson county had no power, under the will of Jesse Overton, to order the slaves belonging to said estate to be reserved from sale, and the real estate to be sold for the payment of debts." The decision was entirely upon the construction of the will, and, in the opinion of this court, the decision was erroneous. The power of the county court does not depend upon the correctness with which they have interpreted the will. The views of this court have been expressed on the other points mentioned in this opinion, in order that, when they are to be passed upon by the Circuit Court, at a subsequent trial, they may be determined with the knowledge of the views which this court entertains.

The judgment is, with the concurrence of the other judges, reversed, and the cause remanded for further proceedings.