————o————

DAVID R. PATTEE, by his next friend, JAMES G. BLAIR, Respondent, *vs.* JOHN THOMAS, Appellant.

1. *Adair county Probate Court—Jurisdiction—Act of Feb.* 11, 1847.—The 3rd section of the act passed Feb. 11, 1847, had the effect of transferring to the Probate Court of Adair county all the jurisdiction relative to matters of probate and guardianship, which was conferred by the General Statutes upon County Courts.

2. *Guardianship—Derivation from father of minor's estate determined by court having jurisdiction.*—The question whether the estate of a minor was derived from his father, as affecting the right of the father as natural guardian, to sell the estate of the minor, is one to be decided by the court having charge of the estate, and this having been decided by that court, proof to the contrary, at a subsequent period, will not affect the jurisdiction of the court.

3. *Guardians and curators—Minors, lands of—Sale at private sale—Probate Courts.*—Probate Courts have power to order the sale of lands of minors at private sale. This power was not taken away by the statute of 1851 and 1855, touching guardians and curators. (R. C. 1855, 826–7, §§ 25, 26, 27 ; McVey vs. McVey, 51 Mo., 406 cited and affirmed.)

4. *Guardianship—Sale of lands of minors—Inventory—Jurisdiction.*—The failure of the guardian to file an inventory, list and appraisement of his ward's property, does not deprive the Probate Court of jurisdiction, nor render void a sale made under the order of the court. (Overton vs. Johnson, 17 Mo., 442, cited and affirmed.)

5. *Guardianship—Minors, lands of—Private sale—Advertisement.*—Sections 24, 25 and 26, Rev. Code 1845, pp. 86, 87, requiring advertisement of sales of lands of minors, does not apply to private sales by a guardian.

6. *Guardianship—Minors, lands of—Sale—Notice.*—The administration law of 1851 did not require notice of sale of lands of minors by their guardians to be given, as in case of sales of lands by administrators.

7. *Guardianship—Lands of minors, sale of—Approval by court.*—The records of a Probate Court, showing a report of a sale of lands of minors by the cur-ator, and his oath thereto, and an entry showing that the court received the report, and ordered the curator to account for the proceeds according to law, is sufficient evidence of approval of the sale.

8. *Judicial sales—Irregularities—Title of purchaser.*—Slight irregularities are not sufficient to overturn the title of a purchaser at a judicial sale, where the court had power to order the sale, and there is no pretense of fraud, especially after the lapse of a long period of time.

*Appeal from Macon Circuit Court.*

*Dryden & Dryden and B. G. Barrow*, for Appellant.

I. If the facts give the defendant an equitable title, upon that title, he can defend himself against the action of eject-ment. (Harris vs. Vineyard, 42 Mo., 572 ; Hayden vs. Stew-art, 27 *Id.*, 288.)

II. The Adair Probate Court succeeds in probate matters to all of the jurisdiction of the County Court. (Rev. Laws of 1845, § 13, p. 331 ; Laws of 1847, § 3, p. 38.)

III. It was averred in the petition for the order of sale, that the property was derived from the parent, and the court proceeded upon the theory of the truth of that averment in making the order of sale. If the fact accorded with the theory the omission to give bond was not even an irregularity. (Wolf vs. Robinson, 20 Mo., 459.)

The giving of bond was not a jurisdictional fact—it was a fact that affected the regularity, merely, of the proceedings. The father being by law the natural guardian, appearing and bringing the property before the court, conferred jurisdiction of the property upon the court.

IV. The requirement that the application for the order of sale should be accompanied by an inventory, list of debts, etc., has no application to guardians, nor is notice required in case of sales by them. The statute expressly provides for sales of real estate at private sale. (R. L. 1845, § 25, p. 86.)

V. It is inconceivable that the court would have distributed the proceeds of the sale without first approving the sale. The act of ordering distribution of the proceeds of the sale must

be taken and held to be an approval of the sale whose proceeds are thus ordered to be distributed. The use of the word "approve" is not necessary to the validity of the order of approval. Whatever expresses the mind of the court, that the sale meets its approbation, is enough. Every reasonable intendment should be made in support of the rights of purchasers at judicial sales. (Cabell vs. Grubb, 48 Mo., 353 ; Strong vs. Drennan, 41 *Id.*, 289.)

*Jas. G. Blair*, for Respondent.

I. The Probate Court did not have jurisdiction to sell :—1st. Because the act creating it did not give it power, either express or implied, to order the sale of the real estate of minors for any purpose whatever. (Acts 1847, p. 38, § 3.)—2d. Because the proceedings being that of the natural guardian to sell without bond, under § 1, p. 547, Stat. 1845, the petition of the guardian should aver the facts to give the court jurisdiction, and the record show that proof thereof was made, neither of which was done in this case. Nothing can be presumed against plaintiff, he being a minor. *Coram non judice.*—3d. Whether it be stated in the petition or record or not, the fact required by said 1st section, Stat. 1845, p. 547, must exist. If it does not exist, though the petition and record averred it did, the court can have no jurisdiction. The plaintiff, even if the petition and record averred the fact, (being a minor) can at any time call the record in question. In this case he has assumed the burden of proof, and shows clearly that the fact essential to jurisdiction did not exist; that his money and not his father's entered the land. The evidence upon this point preponderates in his favor.

II. The proceedings must be held null and void :—1st. Because the petition was not accompanied by a true account of the guardianship, list of debts due ward, and an inventory of estate, etc., and not verified by affidavit as required by law. (Acts 1851, § 1, p. 217; Stat. 1845, § 21, p. 85.)—2d. Because no notice of application or sale being given, all competition in bidding was prevented ; and though a private sale, no good

reason exists for not giving notice of that kind of sale as of public sale, competition in one is as necessary as the other. —3d. Because the report of sale was not approved by the court. (Acts 1851, § 2, p. 217; Stat. 1845, § 33, p. 87; 48 Mo., 148; on all points, see 25 Mo., 584; 41 Mo., 289.)—4th. Equity does not enforce contracts against those who are not parties to them and have nothing to do with the consideration; nor will it aid the defective execution of statutory powers. (Moreau vs. Detchemendy, 18 Mo., 522; Moreau vs. Branham, 27 Mo., 351; Hubble vs. Vaughn, 42 Mo., 351; Abernathy vs. Dennis, 49 Mo., 468; Allen vs. Moss, 27 Mo., 354; Chauvin vs. Wagner, 18 Mo., 531.)—5th. Nor will equity compel an administrator or heir to make a deed for real estate sold by administrator. (Speck vs. Wohlein, 22 Mo., 310.)

NAPTON, Judge, delivered the opinion of the court.

This action is an ejectment brought by David R. Pattee, by his next friend, to recover forty acres of land in Adair county.

The defense relied on and set forth in the answer, is, that Benj. F. Pattee entered this land at the U. S. land office, in the name of his son, the plaintiff, intending it as an advancement; that in 1855 the father, who was guardian of the plaintiff, then under fourteen years of age, and also curator of his estate, applied to the Probate Court of Adair county for an order to sell said real estate, for the education of his ward, the plaintiff; that the court accordingly made an order authorizing said Benj. F. Pattee to sell said land at public or private sale; that afterwards said Benj. F. Pattee caused the said real estate to be appraised by three disinterested householders of the county, who appraised it at $120, and then sold the same to the defendant, at $3 per acre ($120) and agreed to make a deed, and the defendant paid the purchase money. Afterwards, as it is averred, in the same year, in May, 1855, said Pattee made a full report of his proceedings to the said Probate Court, and said report was approved.

It is further stated, that said defendant went into possession and made valuable improvements, but that said Pattee failed to make him a deed that would be good and sufficient to pass the legal title. It is further averred, that the plaintiff received from his father (the guardian) the full benefit of said purchase money, so paid by defendant to plaintiff's guardian, and that in addition to that, he received his share of his father's estate, upon his death intestate, to the value of one thousand dollars. And the defendant concludes with a prayer, that the contract of sale made by said Benj. F. Pattee may be specifically executed, and that the court vest in defendant the rights, title and interest of the plaintiff to this real estate.

The replication denies or ignores these allegations. On the trial the plaintiff read in evidence a patent from the U. S. to himself, David R. Pattee, dated May 1, 1854, and rested.

The defendant then testified in defense of his equitable title, that he bought the land of plaintiff's father, in 1855, for $3 per acre in gold, which he paid; that he bought in good faith, believing that the father, under the orders of the Probate Court, had authority to sell; that he consulted various eminent lawyers, and being assured of the validity of his title, he proceeded to make his improvements on the land in connection with his adjoining farm. There is nothing further in his testimony of importance.

Another witness was called, who stated that he was an attorney at law, and acted for B. F. Pattee, guardian, etc., in the matter of procuring an order for the sale; that he filed the petition, and the court refused to grant it, because Pattee had not given bond as guardian; and thereupon said Pattee was sworn, and stated on his oath, that the money with which the land was entered was his. And his daughter seems to have been also examined by the Probate Court, and she also testified to the same thing; and the court thereupon appointed said B. F. Pattee to be the guardian for said minors, and decided that no bond was necessary; and there were some other reasons given by Pattee, which need not be stated.

The probate judge was then called, who gave a history of the transaction, but as judges speak only through their records, it is useless to note his statements.

The defendant then introduced the records of the Probate Court. 1st. April Term, 1855. "The undersigned, your petitioner and natural guardian and father of the following named heirs, with their respective ages respectively and severally annexed : Julia H. Pattee, aged nineteen years and nine months; Jno. W. Pattee, aged ten years and five months; and David R. Pattee, aged seven years and six months, respectfully represents that a legal guardian ought to be appointed.

" Your petitioner further states, that the said minor heirs aforesaid, own a lot or parcel of land, lying and being in the county of Adair, and State of Missouri, which ought to be sold, for reasons hereafter to be set before this honorable Court ; therefore your petitioner asks for the appointment of a guardian, etc." This was marked, " Filed April 2, 1855. B. G. Barrow, Judge."

Then the record of the Probate Court shows further : "In the Probate Court ; April Term, 1855. The undersigned, your petitioner and guardian and natural curator of Julia H. Pattee, B. F. Pattee, Jr., John W. Pattee and David R. Pattee, minor heirs of said guardian, respectfully represents that he has entered a lot or parcel of land lying and being in the county of Adair, and State aforesaid, in the names of the minor heirs aforesaid, and for their exclusive benefit ; that he at or about the same time, entered a parcel of land for himself and in his own name for his benefit. Your petitioner states that he entered said land inconsiderately without regard to the relative situation of said lands. Your petitioner further states that he designs selling his own lands, and if sold the sale will materially impair the value of the lands of the minor heirs. Your petitioner further states that he now has a standing bid for the entire lot of lands above referred to, provided he can be authorized legally to convey title, etc. The petitioner states further, that he is desirous of giving the

minors aforesaid a liberal education, provided he can get the means to do so. And the petitioner further states, that if these lands were sold and a part of the proceeds applied to the education of the minor heirs, which is really necessary, and the residue vested in real estate judiciously selected, the heirs would be materially benefited, etc. Therefore your petitioner prays the court to authorize him to bargain, sell, convey, etc., all the right, title and interest of the minor heirs aforesaid, (to be applied as aforesaid) in and to the following real estate." (Here follows a description of the land in controversy.)

The next paper from the record is this: " State of Missouri, County of Adair. We, John B. Gallyou, Benj. Murphy and Z. B. Greenstreet, having been appointed by order of the Probate Court of Adair county to appraise the following described land belonging to the heirs of B. F. Pattee, Sen., to-wit: (here is a description of the land in dispute) and after examining the same, do appraise the above land to be worth $4 per acre." Sworn to and subscribed and marked, approved and filed July 2, 1855. B. G. Barrow, Judge.

The next copy of the record of the Probate Court is this: "B. F. Pattee, natural guardian of Julia H. Pattee, B. F. Pattee, Jr., Jno. W. Pattee and David R. Pattee. In the Probate Court of Adair county, Mo., July Term, 1855. The undersigned, natural guardian of the above named heirs, begs leave to submit the following report, in conformity to an order by the honorable Probate Court of Adair county, State of Missouri, at its April Term, 1855. I proceeded to bargain and sell all of the real estate belonging to the above named heirs, situate, lying and being in the county of Adair, State of Mo., known and described as the south east quarter, etc., unto John Thomas, of the State of Iowa, for the sum of $3 per acre. Said sale was made and perfected on the 21st of April 1855, all of which is submitted, etc. Signed, B. F. Pattee."

There is appended an account of sales of Julia's land, of B. F. Pattee's land, of his other children's land, but that is

of no use in this case. But there appears this certificate: "State of Mo., County of Adair, B. F. Pattee, natural guardian of the within named heirs, makes oath and says, that the foregoing report and matters as stated therein, are true. B. F. Pattee. Subscribed and sworn to before me, July 2, 1855. B. G. Barrow, Judge."

Then there appears on the record this: "The court receives the report of J. W. Gallyou, Z. B. Greenstreet and Benj. Murphy, appraisers to appraise the real estate of Julia H. Pattee and other minor heirs, and the report of Benj. F. Pattee, guardian for said minors, of sale of real estate. Whereupon, the court charges said guardian, as follows: For Julia H. Pattee, with the sum of $240: Benj. F. Pattee, $240; David R. Pattee, $240; John W. Pattee, $120, which said Benj. F. Pattee is to account for according to law."

Then the following record is produced from the Probate Court: "Now at this day, March 31, 1856, comes Benj. F. Pattee, guardian for Julia H. Pattee, David R. Pattee, John W. Pattee, and Benj. F. Pattee, Jr., and reports that full payment of the purchase money for the land sold to Thomas has been made to him."

A record of the proceedings of the County Court of Adair county in probate was then read, dated in Feb. 1870. The object of this proceeding was to procure a deed to the defendant, and the Probate or County Court ordered it. The testimony of several witnesses seems to be entirely beside the case, and need not be recited. The Circuit Court gave judgment for the plaintiff, and this judgment is here for review.

It is apparent from the statement, that the judgment of the Circuit Court was based on the supposed invalidity of the sales made in accordance with the orders of the Probate Court. The proceedings of the Probate Court, and the sale of the guardian thereunder were treated as nullities, and the question here is, whether we will regard them in that light, and allow the plaintiff to recover against the claims of the purchasers under the judicial sale.

The first objection made to the title of the defendant, is to the jurisdiction of the Probate Court of Adair county. That was conferred by an act passed Feb. 11, 1847. The third section of that act is in these words: " The Probate Court of Adair county shall have exclusive original jurisdiction in all cases relating to the probate of wills, granting letters testamentary and of administration, and revoking the same, appointing or displacing guardians or curators, or orphans, minors and persons of unsound mind, in binding out apprentices, and in the settlement and allowance of accounts of executors and administrators, guardians and curators; to hear and determine all disputes, whatsoever, respecting wills, the right of executorship, administration or guardianship, or respecting the duties or accounts of executors, administrators, guardians or curators, etc."

The manifest object of this law was to transfer to the Probate Court, created by it, a jurisdiction corresponding with that previously possessed by the County Court.

The 13th section of the general law of 1845, declared, that " the several County Courts shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments, the granting letters testamentary and of administration and repealing the same, appointing and displacing the guardians of orphans, minors and persons of unsound mind, in binding out apprentices and in the settlement and allowance of accounts of executors, administrators and guardians, to hear and determine all disputes and controversies whatsoever, respecting wills, the right of executorship, administration and guardianship, or respecting the duties or accounts of executors, administrators or guardians, etc."

The Probate Court of Adair county succeeded to the jurisdiction of the County Court in terms sufficient to authorize that court to do whatever the County Court had been authorized to do in sales of guardians. But the second objection is, that the father, being natural guardian in this case, could not sell without proof that the estate was derived from him, and that the Probate Court had no jurisdiction, unless such a

case was proved. The first section of the act of 1844, is this: "In all cases not otherwise provided for by law, the father, while living, and after his death and when there shall be no lawful father, then the mother, if living, shall be the natural guardian of their children, and have the custody and care of their persons, education and estates, and when such estate is not derived from the parent acting as guardian, such parent shall give security and account as other guardians."

The petition in this case in the Probate Court, stated that the petitioner had entered this land for his children, and in their names, thereby clearly indicating that he had furnished the money. Whether he did so supply the money, or not, was a question of fact for the consideration of the Probate Court. It seems now from the testimony, that he did not, although the fact appeared otherwise in the Probate Court at the time of the order, and that the grand-father of the children furnished the money. But that was a fact for the consideration of that court, and does not affect the jurisdiction of the court. (Overton vs. Johnson, 17 Mo., 446.)

The principal objection urged to the validity of this sale, however, is, that the Probate Court had no authority to order a private sale, after the passage of the act of 1851, which was subsequently embodied in the revision of 1855. That question was decided in the case of McVey vs. McVey, 51 Mo., 418) where a private sale made subsequent to the act of 1851, was held valid.

The objection that no notice of the intended application was given, as required by the administration law, is untenable. We presume that the act of '51 never intended to make the administration law any further applicable to guardians than would be consistent with the different positions occupied by administrators and guardians. To whom, and for what purpose, could a notice be required in the case of guardians? It would concern nobody but the minors, and they are in court already through their guardian, the only channel through which they can communicate with the court.

The case of Overton vs. Johnson and others, also answers the objection of the neglect of the guardian to file an inventory, which is required in applications by administrators to sell real property on account of a deficiency of personal estate. Judge Gamble in that case, observes: "It is true that the statute directs, 'that when such petition, and such lists and inventories shall be filed, the court shall order that all persons interested in the estate should be notified, etc.'—but the provision is only designed to carry out the direction of the previous section, and does not affect the question of jurisdiction. The jurisdiction is acquired by filing a petition, praying the court to do an act or make an order, which, under the statute, the court is competent to do. Whether the petition is in proper form, or sets forth sufficient facts, or is accompanied with the proper evidence, the court will decide in the exercise of its jurisdiction."

That being the case of an application by an administrator to sell lands on account of a deficiency of personal assets, a statement of the condition of the estate was manifestly of importance; but in the case where the applicant is the father and natural guardian of the infant children, and asserts that the land was entered by himself in the name of his children, it might be presumed, and indeed is the natural implication of his statements, that a sale would enable him to give his children an education, that they had no other property.

The applicability of sections 24, 25 and 26 of the act concerning administration, (Rev. Co. of 1845, pp. 86, 87) to a private sale by a guardian is not perceived. It is clear that these sections relate to public sales. Administration sales at private sale are provided for by §§ 31, 32 and 33. Of what avail would newspaper advertisements, for six weeks, or hand-bills be, in case of a private sale, which indeed, in this case the guardian in his petition stated could be effected without loss of time. In this case the report of the sale was made at the term ensuing the order, and no objection is made on that account.

But it is said the sale was not approved by the court, and this undoubtedly was necessary under the law of 1851 and 1855. The record of the Probate Court, at its July Term, 1855, is as follows: "Be it remembered, that at a term of the Adair Probate Court, begun and held at the court house, in the town of Kirksville, on the 2d day of July, 1855, the following proceedings were had: 'B. F. Pattee, natural guardian of Julia H. Pattee, Benj. F. Pattee, Jr., John W. Pattee and David R. Pattee, etc. The natural guardian of the above named heirs, begs leave to submit the following report, in conformity to an order made by the honorable Probate Court of Adair county, State of Mo., at its April Term, 1855. I proceeded to bargain and sell all the real estate belonging to the above named heirs, situate, lying and being in the county of Adair, known and described as—(here follows a description) unto John Thomas, of the State of Iowa, for the sum of $3 per acre. Said sale was made and perfected on the 21st day of April, 1855, all of which is respectfully submitted. B. F. Pattee, natural guardian, etc.' "

Then follows a statement of the sales and prices, amounting in all to $800. Then follows an oath to the truth of the above, and that the money was all paid, except one dollar.

Then follows this entry: "The court receives the report of J. W. Gallyon, Z. B. Greenstreet and Benj. Murphy, appraisers to appraise the real estate of Julia H. Pattee and other minor heirs; and the report of Benj. F. Pattee, guardian, etc., of sale of real estate. Whereupon the court charges the said guardian as follows:" Here follows a distribution of the proceeds of the sale to the different minors, and said B. F. Pattee is ordered to account for the same according to law. It is true there is no formal entry of approval in this case, but the orders of the court cannot be understood in any reasonable way except as a virtual approval of the report and sales. The court receives the report and orders the money to be charged to the guardian, for the benefit of the minor children. It was impossible for the court to distribute the proceeds of the sale and make the orders which were made without a previous approval of the sale.

Such slight irregularities as these are not to overturn the title of purchasers at a judicial sale, which the court had power to order, and in which there is no pretense of fraud, either on the part of the purchaser or guardian, especially after the lapse of eighteen years.

The judgment will be reversed and the cause remanded; the other judges concur.