WILLIAM C. CARR ET AL., Respondents, *v.* G. R. SPAN-NAGEL, Appellant.

June 26, 1877.

1. A female guardian applied to the Probate Court for an order of sale of the realty of the minors; the proceedings were regular and in strict com_pliance with the law, and the sale was made in the name of the guardian as an unmarried woman, and confirmed; after confirmation of the sale, her marriage was suggested and a successor duly appointed, who *was*

guardian, in due form executed a deed to the purchaser. *Held*, that, in a collateral proceeding attacking the sale, it was incompetent to show that the guardian was married prior to the order confirming the sale.

2. The marriage of a female guardian operates as a revocation of her appointment as such, without any order of the Probate Court.

3. Where the record shows that jurisdiction had attached, and that the proceedings were in strict compliance with the essential provisions of the law, the validity of a judgment of the Probate Court will not be enquired into in a collateral proceeding.

4. Where a sale of real estate is made by a female guardian, under an order of court, the execution of the deed is a purely ministerial act, and may be performed by her during coverture, or by her successor, as guardian, after her coverture is known to the purchaser.

APPEAL from St. Louis Circuit Court.

*Reversed, and judgment rendered.*

R. SCHULENBURG, for appellant: There must be an order of court revoking the appointment of a female guardian; though she marry after her appointment, this will not of itself work a revocation.— 1 Williams on Ex. 488, 449; *Post* v. *Coult*, 3 Mo. 36. The judgment of the Probate Court could not be attacked collaterally. — *Graignon* v. *Astor*, 2 How. 319; *Voorhies* v. *Bank*, 10 Pet. 449; *Philadelphia, etc., R. Co.* v. *Stimpson*, 14 Pet. 448; *Cocke* v. *Halsey*, 16 Pet. 87.

IRWIN Z. SMITH, for respondents.

BAKEWELL, J., delivered the opinion of the court.

This is an action of ejectment, brought by the plaintiffs, who are minors, for certain real estate described in the petition. It was admitted on the trial that Henry G. Paschall is the curator of plaintiffs, who are the sole heirs and legal representatives of Walter B. Carr, deceased; and that Walter B. Carr died before March, 1871, seized of the lot described, of which defendant is in possession. The damages were shown to be 1 cent for detention of the property, and the monthly rents 1 cent. Plaintiff then rested. During the further progress of the trial, evidence was introduced tending to show the following facts: On March 6,

1867, Eugenia L. Carr was appointed guardian of plaintiffs and curator of their estate. On March 25, 1871, the Probate Court made an order of sale of real estate of plaintiffs, including the lot sued for, the sale to take place on the fourth Monday of May, 1871, at the time and place and on the terms set forth in the order. This order was not complied with, and a renewed order of sale was made on July 11, 1871, to take place on the fourth Monday of August, 1871. On July 13, 1871, Eugenia L. Carr married Gerard B. Allen. On August 28, 1871, Eugenia L. Carr, in accordance with the renewed order of sale, sold the lot in question to Anna M. Peters, for $2,000, and at the next September term of the Probate Court, on September 21st, Eugenia L. Carr made report of this sale to the Probate Court. This report shows that the lot was appraised at $2,250, and that all requirements of the law were complied with. The report is verified by Eugenia L. Carr, and is signed "Eugenia L. Carr, guardian of Wm. C., N. Paschall, Eliza, and Walter Carr, minors." Nothing appears in the proceedings by which the marriage of the guardian could be suspected. This report of sale was approved by the Probate Court on the day it was made. On September 30, 1871, the marriage of Eugenia L. Carr was suggested, her appointment as guardian was revoked by the court, and Henry G. Paschall was appointed curator of the estate of the minors, and qualified as such, and, on February 27, 1872, as curator, executed to the purchaser a deed of the lot. This deed, in addition to other recitals, sets forth that the sale was made by Eugenia L. Carr, then guardian of the Carr minors, on August 28, 1871 ; that Eugenia L. Carr reported the sale ; its approval, the revocation of her appointment at the September term, by reason of her marriage, the appointment of Paschall at the same time. A deed of the same date, February 27, 1872, for the same property, was also executed by Gerard B. Allen and wife, Eugenia L., formerly Eugenia L. Carr, guardian of plain-

tiffs, and was delivered to Anna M. Peters. Peters conveyed the premises to Stewart, on November 1, 1872. Stewart erected valuable improvements on the lot, in good faith, and without any notice of plaintiffs' claim; and Spannagel is in possession under a lease from Stewart.

The court declared the law to be that "the sale by Eugenia L. Carr, after intermarriage with Allen, and her report of sale afterwards, were invalid and void; and that no title passed by the deed executed by the successor of said Eugenia, as guardian of the plaintiffs."

The court found for plaintiffs, and judgment was entered accordingly; and defendant appeals.

It is contended by respondents that the marriage of Eugenia L. Carr, *ipso facto*, and without any action of the Probate Court, revoked her appointment as guardian; that she could perform no act as guardian after that date; that the sale, report, approval, and both the deeds to Peters, were, therefore, of no effect to pass to Peters any interest of plaintiff in the lot sued for.

Although, as far as we know, this is a case of first impression in this State, learned counsel for respondents contents himself, so far as this court is concerned, with making a statement of the facts and stating his point. He makes no argument and refers to no authorities in support of the action of the trial court.

Section 34 of article 1 of the chapter concerning administrations (Wag. Stat. 75) provides that if any administratrix marry, "the marriage shall extinguish her power, and her letters be revoked." It is held (*Rucker* v. *Rucker*, 59 Mo. 17) that, under this section, the letters are revoked by the fact of the marriage, and without any order of court. The language of the statute in regard to guardians is as follows (Wag. Stat. 675, sec. 18.): "No married woman shall be a guardian or curator of the estate of a minor, and if any woman, after her appointment, marry, the marriage shall operate as a revocation of her appoint-

ment." It would seem that if no order of court is required in one case, it cannot be in the other; and, following what we conceive to be ·the authority of *Rucker* v. *Rucker*, we hold that Mrs. Carr, on her marriage to Mr. Allen, ceased to be the guardian of the estate of plaintiffs. It does not, however, follow that this fact could be shown in a collateral proceeding for the purpose of attacking this sale; or that, if it appear in such a proceeding, it should defeat the sale. If this sale is void simply because Mrs. Carr married before the sale was made, then no man is safe in purchasing at a guardian's sale where the mother is guardian of the estate of her children, because it cannot be known with certainty that a female guardian is not married. This would be a great inconvenience. It would not only be a hardship upon mothers, who are the natural guardians of their fatherless children, but it would be a serious injury to the minors, whose estates would become unsalable, except at a sacrifice, when the mother was a guardian.

The declared policy of the law is to uphold judicial sales. And, though there is a conflict of authority as to what defects ought to render void sales by administrators and guardians, and the New York courts, in particular, require the purchaser to be on his guard, and are astute to see that the statutory provisions are strictly complied with, yet in this State it has been repeatedly and recently declared that the policy of our Supreme Court is to maintain the validity of these sales, whenever there has been a substantial compliance with the statute. In *Frye* v. *Kimball*, 16 Mo. 21, Judge Ryland said, speaking of a sale made by order of a Probate Court: " We will not disturb the title to real property acquired under sales made in pursuance of the order of the court, and we will not look with a scrutinizing eye into the proceedings of such courts to find defects, in order to set aside sales of real estate sanctioned and ordered by such courts." In *Overton* v. *Johnston*, 17 Mo.

442, a case of an administrator's sale, the court held that a failure to file the accounts, lists, inventories, and appraisements required by the statute would not avoid the sale. Judge Gamble says, in that case: "The jurisdiction is acquired by filing a petition praying the court to do an act or make an order which, under the statute, the court is competent to do. Whether the petition is in proper form, or sets forth sufficient facts, or is accompanied by the proper evidence, the court will decide, in the exercise of its jurisdiction." In *Rugle* v. *Webster*, 55 Mo. 246, it is held that irregularities in administrators' sales cannot be impeached collaterally. And where, in ejectment, it was shown that the application for sale of realty was made by the attorney of the administrator, and not by the administrator himself, and affidavits to the application and report were made by the attorney alone, and that no list of debts accompanied the application, and that the deed was made, not by the administrator, but by his attorney in the proceedings, which deed was supplemented by one by the administrator himself, executed after his final settlement of the estate, it was held that however potent these objections might have proved in a direct proceeding, on appeal they were worthless when used in an attempt to attack the sale collaterally. "It was for the court," says Judge Wagner, "to determine the sufficiency of the petition when it was presented, and, if it made an erroneous decision, the proper remedy was by appeal." And he says that the making of the deed was a mere ministerial act, and suggests that the administrator might perhaps delegate authority to another to do this for him. That point, however, was not in the case. The court would not allow the sale to be impeached, in a collateral proceeding, for irregularity.

It is true that our Supreme Court has not gone to the extent of the ruling in *Grignon* v. *Astor*, 2 How. 319, where the Supreme Court of the United States held that, after the court of original general jurisdiction had passed upon the

subject, they would not allow it to be shown, to impeach a sale in a collateral proceeding, that the record showed no notice by the administrator, as required by law, on presenting his petition for sale ; but our Supreme Court has said that although our Probate Courts are courts of limited jurisdiction, yet, to protect innocent purchasers and give repose to titles, when they act in a matter in which they clearly have jurisdiction, the most liberal intendments and presumptions will be extended in support of their proceedings.   When it is seen that jurisdiction has attached, it will be presumed that the judgments of these courts are correct.   But when a non-compliance with law expressly and positively appears on the record itself, then an intendment will not, in every case, be indulged to uphold the proceedings of courts of limited jurisdiction in Missouri.   But it is only when the record, in apparent and unmistakable terms, shows that there has been a failure to comply with essential requisites of the law, that the validity of a final judgment of a Probate Court will be enquired into collaterally in this State. *Strouse* v. *Drennan*, 41 Mo. 300.

Now, the record in the case before us not only does not show a non-compliance with the law in such essential particulars as want of notice, or approval of the sale at a term earlier than that prescribed by law, which are held fatal defects in administrators' sales, but the record shows that the law has been strictly complied with in every minutest particular.   There is nothing on this record from which the court or the purchaser could have the faintest suspicion that this guardian was married, until after the approval of the sale.   The report of sale is made and sworn to in her widow's name.   The purchaser and the Probate Court could not see that she was married, because to them she held herself out as unmarried, and no suggestion was made by anybody of the fact.   The Circuit Court should, therefore, have refused to see any evidence that this change of condition took place before the sale was consummated and approved,

when such evidence was relied upon as a ground for invalidating this sale; and that court should have indulged the conclusive presumption that the facts were as stated on the record of the Probate Court, that this sale was made and reported by Eugenia L. Carr, an unmarried woman, and was approved whilst she was still the legal guardian of these minors.

Although the order approving this sale was not the judgment of a court of record of original general jurisdiction, but of a court of record of special and limited jurisdiction, yet it was the judgment of a court having power to bind conclusively the persons and things over which it acquires jurisdiction, unless the judgment be reversed by writ of error or appeal. Its jurisdiction must appear on the face of its record; but when the record not only shows its jurisdiction of the person and the property, but also, affirmatively, all the facts and circumstances necessary to sustain its decree, to hold this decree a nullity in consequence of evidence introduced in a collateral proceeding to impeach it, would be of most disastrous consequence; and, although we are gravely asked to do so, neither precedent nor argument is offered by respondent in support of his view.

We think that, in the face of the record of the approval of this sale, it is too late to enquire whether or not the guardianship of Mrs. Carr had been revoked by marriage at the date of the confirmation of the sale by the court; and, further, that the execution of the deed was a purely ministerial act, sufficiently performed by her during coverture, or by her successor as guardian after her coverture was known to the purchaser.

The judgment of the Circuit Court is, therefore, reversed, and judgment will be entered here for the defendant. All the judges concur.