DUANE (ROMAYNE v.). See Case No. 12,028.

DUANE (UNITED STATES v.). See Cases Nos. 14,996 and 14,997.

DUBOIS (FITZPATRICK v.). See Case No. 4,842.

---

## Case No. 4,107.

### DUBOIS v. McLEAN.

[4 McLean, 486.][2]

Circuit Court, D. Illinois. Dec. Term, 1848.

CHAMPERTY — DEEDS — LIMITATION OF ACTIONS—CONSTITUTIONAL LAW—EXECUTOR'S SALES.

1. A deed executed for land, which is held adversely to the grantor, by an individual in possession, is void under the champerty act.

2. The statute of limitation can only run against the legal title.

3. A law authorizing executors to sell so much land of the estate, as shall be necessary to pay the debts of the estate, is held by the supreme court of Illinois, to be unconstitutional. In the case before the court, the law passed March, 1819—the sale was made in 1823. In

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]

analogy to the statute of limitations, the power expired. The sale of 1828, was, therefore, void. The debt on which the land was sold, was contracted by the executor, after the law of 1819 was passed.

[Cited in Atkins v. Fibre Disintegrating Co., 18 Wall. (85 U. S.) 301.]

POPE, District Judge. The plaintiff, one of the heirs of Ionissant Dubois, who died in 1846, shows a patent for the land to his father, dated in 1845. The patent is based upon a governor's confirmation, ratified by the act of congress, of 1809; by this act the patent is authorized to be issued. The defendant, to show an outstanding title, produces a deed to Bradley, dated in 1825, from plaintiff. The plaintiff denies that this deed includes the land in controversy, and adduces proof. But it is unnecessary to consider the proof because the defendant does not claim under the deed to Bradley, either immediately or remotely, but adversely to it. He, therefore, can not avail himself of the estoppel that might defend Bradley. There was an adverse possession to Dubois at the date of the deed; and it was therefore void under the laws against champerty and maintenance. The defendant shows a deed dated in 1828, from the executors of Dubois, for the premises in controversy, to those under whom the defendant claims. The executors profess to sell the land by authority conferred on them by the act of the Illinois legislature, of the 4th of March, 1819; the second section was repealed in 1820. This act authorizes them to sell as much of the land as may be sufficient to pay the debts of their testate. He relied upon the statute of limitations of 1835, barring real actions after seven years' residence, under "a connected title in law or equity, deducible of record," etc. He proved residence by some one most (not all) of the time from and after 1830, till suit brought, and that the mill on the premises was run nearly all the time by the hands of the defendant who resided off the land; but does not prove that those who resided on the land had any title. The defendant has not proved a possession of twenty years, nor shown that any one resided on the land under a title in law or equity, deducible of record, etc.

But assuming that either or both these facts were proved, or may be on another trial, what would it avail the defendant? To answer this question, it becomes necessary to look into the plaintiff's title, during the period from 1828, (the date of the deed,) to 1845, (the date of the patent.) It was a confirmation by the governor, ratified and confirmed by congress in 1807, when patents were ordered to be issued in such cases, when the governor had not given the claimants patents. In this and other cases it had not been done. In 1807 the title of plaintiff was an inchoate, legal title, and so remained until the examination of the patent in 1845. The legal title was not perfected until the patent was issued. The plaintiff

could not maintain ejectment until the land was separated from the public domain. Before that, the legal title was in the United States. As the plaintiff could not sue, no laches can be imputed to him; therefore the statute of limitations did not begin to run before the date of the patent.

The case of Soulard's Heirs v. U. S., 10 Pet. [35 U. S.] 100, does not contravene this position, because in that case the land had never vested in the United States, having been severed from the domain of Spain before Louisiana was transferred to the United States.

Is the deed of 1828, from the executors of Dubois, operative to convey the estate? This depends upon the construction of the constitution of Illinois, and the law of March 4, 1819 [1 Laws Ill. 115]. The legislature assigns no reason for the passage of the law, but gives to the executors of Dubois authority to sell, in such manner as they please, the lands of their testate, for the payment of his debts, restricting them to the sale of no more than enough to satisfy them. Is this law constitutional? The supreme court of Illinois, in the case of Lane v. Dorman [3 Scam. 238], says no. This is a decision of the supreme court of Illinois upon the power of the legislature. It is made the duty of this court and the supreme court of the United States to conform to that decision. The cases reported in the 2d and 16th Peters' Reports may seem to conflict with that of Lane v. Dorman. Yet the latter case is authority to this court, as it is a decision of the state court, giving a construction to the law of the state. But in the cases in Peters' Reports, it is evident that the supreme court of the United States relied much upon the justice of the case and the antiquity of the transaction. In the case at bar, the defendant does not attempt to show fairness, but relies upon the presumption that the executors acted correctly after a lapse of eighteen years. But length of time is not available against him who can assert his better title.

Another view of this case merits notice, viz.: At the same session of the legislature at which the law of March 4, 1819, was passed, viz.: On the 23d March, a general law was enacted which authorized executors and administrators under certain regulations, to sell lands for the payment of debts of their testates or intestates. These laws are in pari materia and must be construed together: therefore, the regulations in the general law furnished the rule of action for the executors of Dubois under the special law, if it did not supersede it. They have not shown this. Their not doing so is a cause to suspect fraud.

Again, the laws giving power to sell were passed in March, 1819. The sale was made in 1828; nine years. In analogy to statutes of limitations this power expired in 1824. No reason is assigned for the delay. Hence the sale in 1828 was without authority.

Again, the only debt shown to support the

sale in 1828, was one of two hundred and fifty-seven dollars, contracted by the executors in August, 1824. The land sold for more than $1,200,—the surplus unaccounted for. The land was sold, not for a debt of Dubois, but, for a debt contracted by the executors, more than five years after the passage of the law, and it is not proved that they had paid that debt. It is no answer that this debt was contracted by the executors in due course of administration, and for the benefit of the estate. It is sufficient that it did not exist March 4th, 1819, and therefore, not embraced by the law. But certainly it was only a liability and not a debt.