IN

# THE · SUPREME COURT

OF

## THE STATE OF MISSOURI,

OCTOBER TERM, 1862, AT ST. LOUIS.

———— •••• ————

DANIEL A. STEWART, GUARDIAN OF JAMES M. JOHNSON, MARY
 E. JOHNSON, AND EMILY F. JOHNSON, Plaintiffs in Error,
 *v.* ENOCH H. GRIFFITH, Defendant in Error.

*Constitution.*—An act of the General Assembly empowering a guardian to sell
 the land of his wards, and to apply the proceeds thereof to their benefit under
 the direction of the court, is not in violation of the constitution of this State.

*Error to Marion Circuit Court.*

*A. W. Rush, T. L. Anderson,* and *Glover & Shepley,* for
plaintiffs in error.

I. It can hardly be contended that the act is unconstitutional
as being either an *ex post facto* law, or as a law impairing the
obligation of contracts, or that it is retrospective in its opera-
tion. It is not an *ex post facto* law, if for no other reason,
because this clause has been decided, over and over again, to
apply only to criminal matters.

It is not a law impairing the obligation of contracts, be-
·cause there is no contract about the subject matter. It is
not retrospective. Judge Story, in the case of the Society,

2—VOL. XXXIII.

&c., v. Wheeler, 2 Gall. 139, gives the definition of a retrospective law.

II. The act of the Legislature is not unconstitutional as being the exercise of a judicial power. (Rice v. Parkman, 16 Mass. 326.)

The whole matter is fully discussed in the case of Davidson v. Johannot, 7 Met. 388. (See, also, Sobier v. Massachusetts Hospital, 3 Cush. 483; Mason v. Wait, 4 Ill. 127; Estep v. Hutchman, 14 Serg. & R. 435.)

III. It cannot be maintained to be unconstitutional on the ground that it is against public policy, or beyond the legitimate exercise of proper legislative power, or as being the passing of a special act for the benefit of particular individuals apart from, and antagonistic to, the general law regulating the particular subject. (Hovies v. Clymer, 2 Barr, 277.)

So, also, in Sergeant v. Kuhn, 2 Barr, 293—which was the case of a devise to trustees to hold for A. during life, with remainder over, with power in the tenant for life to sell on irredeemable ground rents—an act of Legislature authorized tenant for life to sell on redeemable ground rents, held constitutional. (Williamson et al. v. Williamson et al., 3 Smedes & M. 715; Carrol et al. v. Olmstead et al., 16 Ohio, 251; Blagge v. Miles, 1 Story, 427; Cochran v. Van Surley, 20 Wend. 365; Wilkinson v. Leland, 2 Pet. 657; Watson v. Mercer et al., 8 Pet. 88.)

What did this act profess to do? In the first place, it undertook to make these minors, children of W. C. Carr, of full age.

I have not found, in my examination, a doubt thrown out of the power of the Legislature over the matter, nor can I conceive how a plausible argument can be formed against the constitutionality of such a power. It interferes with no rights of property; it impairs no contract; it is not judicial, not retrospective, nor *ex post facto*. It was exercised by our Legislature when the common law was first adopted here by making all of age between the ages of twenty-one and twenty-five, which was then the time of full age; it has been ex-

ercised repeatedly in other States in making females of age at the age of eighteen years; it has been exercised, also, in individual instances, for the purpose of enabling the child to receive its own earnings, and relieving the parent from the burden of its support. It is simply a question of social regulation; and no question of the entire control of the Legislature over the subject matter has ever been mooted, except in the case of 4 N. Hamp. 572, which was no judgment upon a case upon argument, but the answer to a query of the Legislature.

IV. The subject matter is not, by this act, taken from the range of judicial cognizance and judicial judgment. It is simply turning realty into personalty; makes no person of full age, and expressly gives to the County Court the power to approve or reject all sales that may be made. The sale, in order to be valid, must have the judicial judgment of the court.

We need scarcely call to the attention of the court the fact that this legislative power has been exercised in this State from an early period, and that vast amounts of land are held upon titles emanating from these acts of the Legislature. A single glance at the index of any volume of the Session Acts will satisfy the court on that head.

*Lipscomb*, for defendants in error.

I. The act of the Legislature relied upon is, in its nature, a judicial sentence, a judgment or decree, rather than a rule of action—is an infringement of the judicial department of the government, and therefore in conflict with the second article of the constitution of the State, and inoperative and insufficient to enable the plaintiff to convey defendants any title to the lands sold. (4 Mo. 120, State v. Fry et al.; see opinion of the judges of the Superior Court of Judicature of New Hampshire to the General Assembly of that State ; 4 N. H. 572 and following, where the very point now under consideration is discussed; Pierce's heirs v. Pallon et al., 7 B. Mon. 162.)

We are aware that in some of the States acts of this sort have been held constitutional, and the deed of the appointee of the power operative to pass the title. (Rice et al. v. Parkman, 16 Mass. 326 ; Davidson v. Johannot, 7 Met. 388 ; Sobier v. Mass. Gen. Hos., 3 Cush. 483 ; Cochran v. Van Surley, 20 Wend. 365.)

In this last case, while the validity of the law is declared, yet the question seems not to have been made or considered as to whether the Legislature, in the passage of the act, did not infringe the judicial power.

II. The order of the County Court being made under the special act, and not under the general law, does not help the matter. The act was in the nature of a writ of mandamus upon the court, and the order of the court was mere submission to the legislative mandate ; it was not the result of the exercise of judicial consideration, but the execution of a decree or sentence of another tribunal assuming judicial power. But for the special act, the court would not have made the order of sale ; otherwise, why resort to the Legislature in the first instance ?

The order of sale, then, not being the result of judicial consideration, it, like the act of the Legislature, is insufficient authority by which to divest the wards of their title.

If these positions be tenable, the instructions and motion for new trial were properly refused. (Priv. & Loc. Acts of 1855 ; 4 Mo. 120 ; 4 N. H. 572; 16 Mass. 326 ; 7 Met. 388 ; 3 Cush. 483 ; 20 Wend. 365 ; 7 B. Mon. 162.)

BATES, Judge, delivered the opinion of the court.

By an act of the General Assembly, passed on the 17th day of November, 1855, it was enacted as follows :

" SECTION 1. Daniel A. Stewart, guardian of the persons and curator of the estate of James M. Johnson, Mary E. Johnson and Emily F. Johnson, minor heirs of William Johnson, deceased, is hereby authorized and empowered to sell all the real estate belonging to said minors in Marion county, in the

State of Missouri, subject to the approval of the County Court of said county of Marion.

" SEC. 2. The County Court of Marion county is hereby authorized and required to make an order for the sale of the west half south-east quarter of section twenty-one, and the west half north-east quarter, and the north-east fourth of the northeast quarter of section twenty-nine, all in township fifty-seven, of range seven west, with the appurtenances thereunto belonging, and prescribed the mode of appraising and selling the said real estate.

" SEC. 3. Said real estate shall not be sold for less than three-fourths of its appraised value, or the amount at which the same shall have been appraised.

" SEC. 4. Upon the payment of the purchase money for said real estate the said Daniel A. Stewart is hereby authorized to make a deed to the purchaser or purchasers thereof, to be acknowledged before the said County Court of Marion county, conveying all the right of said minors in and to said real estate to the purchaser or purchasers thereof.

" SEC. 5. Said Stewart shall make a full report of his proceedings as to the appraisement and sale of said real estate to said County Court, and if the same be approved by said court, an order shall be made by said court accordingly ; and if such proceedings be not approved by said court, the same shall be null and void ; and the court shall, upon the application of said Stewart, make another order for the sale of said real estate, containing the same requirements as hereinbefore specified.

" SEC. 6. The money arising from the sale of said real estate, or so much thereof as may be necessary, shall be applied, under the direction of said County Court of Marion county, to the support, maintenance and education of said minors : *Provided, however*, that said money shall be loaned out at legal interest, and shall be used for the purposes aforesaid only, in such sums as may, from time to time, be required." (See Private and Local Acts of Missouri, Adj. Sess. 1855, p. 395.)

Stewart, acting in pursuance of that law, and under the order of the County Court of Marion county, sold the land mentioned in the second section to the defendants, who paid a portion of the price bid and gave notes for the remainder, and this suit is brought for the recovery of the amount of the notes.

The defendants say that the notes are without consideration, because Stewart had no power or authority to sell said land.

The court below sustained that defence and gave judgment against the plaintiff, who appealed to this court.

The only question presented for our consideration is as to the power of the Legislature to authorize Stewart to sell the land of his wards.

It is insisted by the defendants that the power exercised by the General Assembly in passing the act quoted is of a judicial character, and therefore void, because it is in conflict with the constitution of the State. The question presented is of very great interest—firstly, because of the important principles involved in its consideration; and secondly, because of the number of estates which have been transferred under similar laws passed by the General Assembly.

Whilst it is the duty of the judiciary to construe statutes, and, if they be found to be in violation of the constitution, to declare them void, yet thus to annul an act of a co-ordinate branch of the government is the exercise of a very high power, which must be used with great care and circumspection, and only in a plain case.

The laws of Missouri are, first, the constitution, treaties and laws of the United States; and, second, the constitution and statutes of the State of Missouri, including the common law of England and the acts of the British Parliament made prior to the fourth year of the reign of James the First, which are adopted by a statute as laws of the State. These constitute the body of the laws of Missouri, and we know no "higher law"—no paramount *leges legum*. We have no competency to know or decide upon "natural right," or the principles of "eternal justice."

The second article of the constitution of Missouri is as follows:

" The powers of government shall be divided into three distinct departments, each of which shall be confided to a separate magistracy ; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

The first section of the third article declares that " the legislative power shall be vested in a General Assembly."

The first section of the fifth article declares that " the judiciary power as to matters of law and equity shall be vested in a Supreme Court," &c., and this language is repeated in the amendments adopted in 1822.

The government organized by the constitution has all the powers of the State, and may exercise them in all cases not prohibited by the constitution ; and in considering the powers of the legislative departments we begin with a very different rule from that which obtains when we are considering the constitutional validity of an act of the Congress of the United States, because it is expressly declared in the constitution of the United States that " the powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," and we therefore look to the constitution of the United States to find the authority for every act of Congress.  But all the legislative power which the people of the State have is vested in the General Assembly, with the exception of such power as is by the constitution itself prohibited.  If this act of the General Assembly be an exercise of legislative power, it is valid unless it is forbidden by the constitution itself, and it is not perceived that anything in the constitution forbids it.

The fact that the supposed owners of the land which was ordered to be sold were infants, does not, in our opinion, affect the constitutional question.  Under the constitution, every citizen is the equal in rights and responsibilities of ev-

ery other citizen, whether we regard an adult sane man, not convicted of crime, or a new-born infant, a married woman, a lunatic, or a convicted felon; yet, for just reasons, the Legislature has declared that certain classes of citizens are under disability to perform some acts which citizens generally are competent to perform, and has exercised peculiar authority over their persons and estates. The legal propriety of such acts when general, uniform and prospective, is not disputed. Nor does it affect the question that the property authorized to be sold was land. The constitution makes no distinction between real and personal property.

It would be competent for the Legislature, by a general act, to direct the sale of all the land or all the property of infants.

The question, however, yet remains, is it within the power of the Legislature to empower one named man to sell specific property of another man? This is the bare question. The fact that the man whose property is to be sold is himself under a disability to sell, which disability is created or made efficient by law, confers no power upon the General Assembly. That this might be effected by a general, uniform, prospective law not being doubted, there remains only the objection that it is an exercise of judicial and not legislative power, because of its special application to a particular case only.

In this act, the General Assembly decides, or assumes, that Daniel A. Stewart is the guardian of the persons and curator of the estate of James M. Johnson, Mary E. Johnson, and Emily F. Johnson; that they are minors; that they are heirs of William Johnson, deceased, and that they own certain described land. Are the matters so decided or assumed definitely settled, or may they be disputed? Can the supposed minors deny that they are minors? Can they deny that Daniel A. Stewart is their guardian or curator of their estate, and if they do so successfully, can they reclaim the land sold? Is the trust and power reposed in Stewart personal, to be exercised by him alone, or can any person holding his offices of guardian and curator exercise it; and must it be exercised

during the minority of all the infants, or can it be exercised after some or all of them have attained majority ?

These and many other interesting questions present themselves as we consider the act, but the study of these questions does not much assist us in determining the main question whether the General Assembly exercised judicial power in passing this act.

It is very difficult, if not impossible, to give comprehensive definitions of "legislative power" and "judicial power" so as to enable a judge to determine with certainty, in all cases, to which power a performed act belongs.

In the case of Watkins v. Holman, 16 Pet. 25, the Supreme Court of the United States said, " it is difficult to draw a line that shall show with precision the limitation of powers under our form of government. The executive in acting upon claims for services rendered may be said to exercise, if not in form, in substance, a judicial power. And so, a court in the use of a discretion essential to its existence by the adoption of rules or otherwise, may be said to legislate. A legislature, too, in providing for the payment of a claim, exercises a power in its nature judicial." Yet we suppose that none of these acts referred to by the Supreme Court of the United States, violate the article of the constitution which makes a division of the powers of government. Though of the nature of acts appropriate to another department, they are essentially necessary to the proper performance of the duties of the department performing them.

In the case of the State v. Fry and others, 4 Mo. 120, this court held that a divorce granted by the Legislature was invalid, and Judges McGirk and Tompkins (in addition to other reasons) both expressed the opinion that the granting a divorce was the exercise of judicial power, and the principal argument used by them to show that it was not a law, was that it expended its force upon the parties divorced, and was not a rule of conduct, permanent, uniform and universal.

We cannot, however, agree that all laws must be univer-

sal, and apply uniformly to all citizens. Laws may and often do properly apply only to certain classes of citizens to the exclusion of others; and if any less than the whole number of citizens may be comprehended in a law, no reason is perceived why a law may not comprehend only a certain number, whether mentioned by general terms of description or by name or other special description. Nor is any reason perceived why a law should necessarily apply to all property of like character within the State. A law may be such, which applies only to a certain kind of property or even to a specific piece of property. It may be a rule of conduct as to that property only, and efficient as a law, if it violated no provision of the superior law.

The act under consideration, we think, cannot be regarded as other than a law. It is true that it decides or assumes the existence of certain facts, but that is also true of almost all laws.

It has not the character of a judicial act. It is not the adjudication of what the law is, but is a declaration of what the law shall be. It is not the administration of justice according to existing law, nor the determination of a controversy. It is not a violation of the constitution. The law is valid, and the sale of the land, if conducted in accordance with its requirements, (which is not disputed,) passes the title of the infants.

It would extend this opinion too much to decide and comment upon many of the cases which we have examined. We refer to the cases cited below, as sustaining in part, and more or less pointedly, our views: Rice v. Parkman, 16 Mass. 326; Davidson v. Johannot, 7 Met. 388; Sobier v. Massachusetts General Hospital, 3 Cush. 483; Dorr's case, 3 R. I. 299; Taylor v. Place, 4 R. I. 324; Cochran v. Van Surley, 20 Wend. 365; Leggett v. Hunter, 19 N. Y. (5 Smith) 445; Carter v. The Commonwealth, 1 Grant's Cases, Penn. 216; Fullerton v. McArthur, 1 Grant's Cases, Penn. 232; Kneass' Appeal, 31 Penn. State Rep. 87; Schwenberger v. School Directors, 32 Penn. State Rep. 34; Doe v.

Douglass, 8 Blackf. (Ind.) 10; Kibby v. Chitwood's adm'r., 4 Monroe, 91; Shehan's heirs v. Barnett's heirs, 6 Monroe, 594; 7 B. Monroe, 162; Holman v. Bank of Norfolk, 12 Ala. 369; McComb v. Gilkey, 29 Miss. (Cush.) 146; Boon v. Bowers, 30 Miss. (1 Geo.) 246; 4 Cal. 46; Wilkinson v. Leland, 2 Pet. 627; Watkins v. Holman, 16 Pet. 60; State v. Fry, 4 Mo. 120; Bryson v. Bryson, 17 Mo. 590; Hamilton and Treat v. St. Louis Co. Court, 15 Mo. 4; Cunningham v. Gray, 20 Mo. 170.

In New Hampshire, the justices of the Superior Court of Judicature advised the House of Representatives of the General Court that an act of the Legislature to authorize the sale of the land of a particular minor cannot be easily reconciled with the spirit of the article in the constitution separating the powers of government. (4 N. H. 572.)

In Illinois, (3 Scammon, 238, Lane v. Dorman,) it was held that a special law authorizing a sale of land of a deceased person to pay specified debts was unconstitutional as an exercise of judicial power.

The case of Dubois v. McLean (4 McLean, 486) was decided by the Circuit Court for the United States for Illinois, in submission to the authority of the case of Lane v. Dorman.

We refer, also, generally, to Sedgwick on Statutory and Constitutional Law, chap. 5, p. 142, &c., and to Smith on Statutory and Constitutional Law, chap. 7, and part of chap. 9, beginning on p. 500; and to the opinion of Judge Hickey, in the case of Sidney Bedford, in the Circuit Court of Fayette county, Kentucky, in the 10th volume of the American Jurist, p. 297; and also to a criticism of the case of Watkins v. Holman, (16 Peters, 25,) supposed to have been written by Hon. Archibald Williams, late of Quincy, Illinois, and published in the Western Law Journal of May, 1847, (vol. 4, p. 337.)

The view which we have taken of the subject is expressly based upon the idea that the act in question directs only the management of the property of the infants, changing its

form and directing its use for their own benefit. Had the act. undertaken to appropriate their property to the use of any other person it would have been void, because "retrospective in its operation" by destroying rights previously vested by law.

In like manner, an act which should undertake to annul or alter a settlement or disposition of property lawfully made by deed, last will, or other means, would be void. The property acted on in this case is understood to have been absolutely the property of the infants, subject to their free use and disposal under the limitations and provisions of the general law. Had the land been devised to them with a provision in the devise limiting their power to dispose of it before they should attain the age of twenty-one years, we are of opinion that no power in the State could authorize them, or any other person for them, to dispose of it before that time; because by so doing the lawful act of the devisor in thus limiting his devise would be annulled by an act "retrospective in its operation." But, as this case stood, no past act, and no right of any person other than the infants was affected, and the right of the infants to the land was subject to a known power in the State to cause the sale of the land, manifested by existing laws, the provisions of which were at all times liable to repeal or modification, and the act in question was only a modification of the general laws in respect to the management of the estates of infants.

Whilst we maintain the validity of this law, we think that we violate no rule of propriety or courtesy in. expressing a decided opinion of the general *impolicy* of acts of like character.

Judgment reversed and cause remanded ; Judge Bay concurring.

Judge Dryden, having been of counsel in the lower court, did not sit in the cause.