Clusky v. Burns.

CLUSKY *et al.*, *Plaintiffs in Error*, v. BURNS.

### Division One, March 5, 1894.

1. **Constitution**: SALE OF DECEDENT'S LAND: SPECIAL LEGISLATION. Acts of the legislature, passed prior to the constitution of 1865, authorizing guardians, administrators and similar trustees to make sales and conveyances of land held for their beneficiaries were constitutional.

2. ———: ———: ———. Nor was it necessary, in the absence of a constitutional inhibition, that the legislative power should be exercised by means of judicial proceedings.

3. ———: ———: ———. The authority of the legislature under such special acts could authorize only the sale of land of persons under disability.

4. **Will**: SALE OF DECEDENT'S LAND: SPECIAL LEGISLATION: CONSTITUTION. A testator gave all his property to his wife and children and further provided that his wife should have control and possession of the same and that if it became necessary to sell property for the purpose of paying debts certain real estate should be sold last, the whole of the property to remain in the possession of the testator's wife during her widowhood for the support of her and the children. *Held*, that the widow did not take such a vested interest in the land that a sale by the executor by authority of a special act of the legislature deprived her of her property without due process of law.

5. ———: ———: ———: ESTOPPEL. Where such special act was passed at her instance and she was under no disability at the time of the sale and conveyance thereunder, neither she nor her heirs can dispute its validity.

*Error to Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Wm. O. Mead* and *Wm. R. Hudson* for plaintiffs in error.

(1) The act of the general assembly of the state of Missouri, entitled "an act for the benefit of the estate

of James T. Williams, deceased," is void for the reason that it is in conflict with the constitution of the state of Missouri, and the constitution of the United States, in that it impairs the obligation of a contract by attempting to set at naught the will of James T. Williams by and through which plaintiffs derive title. Acts, 1849, p. 514; Constitution of Missouri, 1821, article 13, sec. 17; Constitution of the United States, article 1, sec. 10; *Dartmouth College v. Woodward*, 4 Wheat. 518; *Powers v. Bergen*, 6 N. Y. 358. (2) The widow, Louisa Williams, took as a devisee under the will of James T. Williams, her husband, in lieu of dower and was therefore not only a purchaser in the technical sense of the terms, but for a valuable consideration. Dower is an estate of value. 2 Scribner on Dower [1 Ed.], t. p. 496, sec. 59; *Howard v. Francis*, 30 N. J. Eq. 444; *Sykes v. Chadwick*, 18 Wall. 141. The devisees of James T. Williams, deceased, took by purchase as much so as if it had been by deed or grant in the ordinary form. 3 Wash. on Real Property [4 Ed.], p. 4, sec. 3. (3) The act of March 10, 1849, is unconstitutional, for the reason that it would, if sustained, deprive the devisees of James T. Williams, deceased, of their property without due process of law, or law of the land. Constitution of Missouri, 1821, article 13, sec. 9; *Clark v. Mitchell*, 64 Mo. 564; *Clark v. Mitchell*, 69 Mo. 627; *Hager v. District*, 4 S. C. Rep. 663; *Chauvin v. Valiton*, 3 L. R. A. 194; *Kuntz v. Sumpton*, 2 L. R. A. 665; *In re Gannon*, 5 L. R. A. 359. (4) The legislature had no power to pass the act in question for the reason that it contravenes the terms and provisions of the will of Williams. He provided for a home for his widow and children and it was not for the legislature to say whether he had provided wisely or unwisely. *Stewart v. Griffith*, 33 Mo. 13; *State ex rel. v. Adams*, 44 Mo. 570; *Brown v. Hummel*, 47

Am. Dec. 431; *Mosley v. Tuthell*, 6 Am. Rep. 710.
(5) As to the plea of the statute of limitation by the
defendant it can not be made available as to the inter-
est of Louisa, the widow, for the reason that at and be-
fore the date of the sale by Price, administrator, she was
a married woman, the wife of Staples, and continued a
married woman and wife of Staples until the twenty-
eighth day of December, 1886, less than three years
next before the commencement of this action. *Dyer
v. Witler*, 89 Mo. 81.

*Goode & Cravens* for defendant in error.

(1) The right of plaintiffs is barred by the more
than twenty-four years' adverse occupancy of the
defendant and those under whom he claims. R. S.,
sec. 6767. (2) The sale by the administrator of the
estate of James T. Williams, the ancestor of plaintiffs,
pursuant to the special act of the general assembly,
vested in the purchaser Jamison, under whom defend-
ant claims, a fee simple title to the premises in contro-
versy, to which title the defendant has succeeded.
*Wilkinson v. Leland*, 2 Pet. (U. S.) 660; *Rice v. Park-
man*, 16 Mass. 326; *Carroll v. Lessee*, 16 Ohio, 251;
*Kibby v. Chitwood*, 16 Am. Dec. 143; *Stewart v. Grif-
fith*, 33 Mo. 13; *Watts v. Brown*, 44 Mo. 254; *Gannett
v. Leonard*, 47 Mo. 206; *Shipp v. Klinger*, 54 Mo. 238;
*Thomas v. Pullis*, 55 Mo. 211; *Cargile v. Fernald*, 63
Mo. 303; *Dickens v. Carr*, 84 Mo. 660; *Kneass' Appeal*,
31 Pa. St. 87. (3) In any case as the land was sold
to pay debts and the proceeds applied to that purpose,
the sale, even if void, would leave in defendant as the
successor of the purchaser, an equity for reimburse-
ment of the purchase money and money expended in
improvements which would suspend plaintiff's right of

recovery until this amount was paid.    *Henry v. McKerlie,* 78 Mo. 416.

MACFARLANE, J.—This suit is ejectment to recover a parcel of real estate situate in the city of Springfield. The title to the property as shown by the evidence is as follows: James T. Williams died seized thereof in December 1846, leaving a will by which he bequeathed all his property to his wife and children, providing that his wife should have possession and control thereof, except as to certain property in Neosho which he directed should be sold, and the proceeds used in the payment of his debts, or invested. The will then provided that should it become necessary to sell property for the purpose of paying debts "the house and lot on which I now live shall be reserved to the last, and the two negro girls, Matilda and Eliza, next to the last; the whole of my property to remain in the possession of my wife during her widowhood for the support of herself and children." The house and lot on which testator lived included the property in controversy. The testator left surviving him his wife and four children, Mary, born in September, 1840; Ellen, born in June, 1842; Virginia, born in December, 1845; and Tully, born May 2, 1844. Virginia died November 17, 1847. Mary married William B. Crane November 23, 1856, and died leaving one child. Ellen married Henry Clusky July 9, 1863. These children, or their heirs or grantees, are plaintiffs in this suit. The widow married John T. Staples August 23, 1849, in St. Louis county, and died without other issue, March 14, 1888. Her husband died December 28, 1886.

Deceased at his death owned two negro girls, Matilda and Eliza. These were kept by the widow and one of them at least was disposed of by her. The widow seems to have left the homestead soon after her

husband's death. Mrs. Williams and one John B. Cecil were appointed executors. On the tenth day of March, 1849, the following act was passed by the general assembly of the state and approved by the governor:

"Section 1. John B. Cecil, executor of the estate of James T. Williams, deceased, is hereby authorized and empowered to sell and convey all or any part of the real estate to which the said James T. Williams was entitled at the time of his death, and which may be included within the limits of or adjoining the town of Springfield, in Greene county, Missouri.

"Section 2. All sales of land or town lots made in pursuance of the foregoing provisions, shall be made upon such terms as in the opinion of the said executor, shall seem most advantageous to said estate.

"Section 3. The said John B. Cecil, as executor as aforesaid, is hereby empowered and required whenever the purchase money is fully paid upon any contract he may make under the provisions of this act, to make to the purchaser a deed conveying in fee simple all the right, title, and interest which the said James T. Williams had, at the time of his death, in and to the land or town-lots sold as aforesaid, which said deed shall be acknowledged and recorded in the same manner and with like effect as other deeds for the conveyance of land.

"Section 4. All the powers herein granted to the said executor, in the event of his death, resignation, or removal, shall vest in the person to whom by law the care, custody, and management of said estate shall be committed." Sess. Acts 1849, p. 514.

The marriage of the widow revoked her letters and Cecil afterwards left the state and Wm. C. Price was appointed administrator with the will annexed. By authority of said act, on the first day of September,

1851, the said Price sold and conveyed by deed in due form, the land which had been the homestead of deceased, to Cary A. Jamison, to whom possession was given. Defendant claims under deeds from Jamison. The land has been in the possession of defendant and his grantors since the date of the deed from Price.

It was shown that Price, as administrator, filed an inventory in the probate court charging himself with the proceeds of the sale, and the evidence tended to show that it was used in the payment of the debts of the estate. Neither of the negro girls was sold, nor does it appear that they ever came into the possession of Price, as administrator.

Plaintiff objected to the introduction in evidence of said act of the legislature on the ground that it was unconstitutional and to the deed from Price on the ground that said act conferred no valid power on him to make the conveyance. The court sitting as a jury rendered judgment for defendant and plaintiffs bring the case to this court on writ of error.

I.    It will be seen from the foregoing statement that the defendants, and those under whom they claim title, had been in the actual adverse possession of the land from 1851 until the commencement of this suit December 16, 1889, a period of thirty-eight years. There is no question that all the rights the children of the testator, James T. Williams, took under the will, are barred by the statutes of limitations. As to their interests it matters not whether they were divested by the deed made by Price under the authority given him by the act of the legislature in question.

The widow, who also took an interest under the will, married after the act was passed but before the sale was made, and her husband did not die until 1886. The widow died March 14, 1888, and plaintiffs claim by descent under her. Defendants insist that the

interest of the widow was also barred, under a proper construction of the statutes of limitations, and ask that the decision in *Dyer v. Wittler*, 89 Mo. 81, be reconsidered. The view we take of the sale and conveyance made by the administrator renders that task unnecessary.

II.   As the power undoubtedly exists in the legislature to direct the sale of land of deceased persons for the payment of their debts, and of minors, lunatics and other persons under disabilities, no legal reason can be assigned why the discretion of that body, in the absence of any constitutional inhibition, should be exercised solely under judicial proceedings. Prior to the constitution of 1865, special acts of the legislature authorizing guardians, administrators, and such trustees, to make sales and conveyances of land, held for their beneficiaries, was so common as to have become one of the usual modes of granting and exercising the power of sale in such cases. The constitutionality of such legislation has been affirmed by this court in numerous cases and has never been denied. *Stewart v. Griffith*, 33 Mo. 13; *Gannett v. Leonard*, 47 Mo. 206; *Hindman v. Piper*, 50 Mo. 294; *Shipp v. Klinger*, 54 Mo. 238; *Thomas v. Pullis*, 56 Mo. 211; *Cargile v. Fernald*, 63 Mo. 304; *Dickens v. Carr*, 84 Mo. 660.

So well settled was the constitutionality of such laws regarded that WAGNER, J., in *Shipp v. Klinger*, *supra*, in declining to reconsider the question, says: "It would be entirely safe to say that millions of dollars have been invested upon the strength of these titles, and for the courts of this day to declare the acts, and the titles made in pursuance of them, void, would be a hazardous undertaking, and would unsettle property rights to an alarming extent. We must, therefore,

decline to go into the question, or consider it open to discussion.''

An examination of the decisions cited above will show that sales made under special acts were upheld in cases of guardians and curators selling the land of their wards; administrators selling the land of the decedent for the payment of the debts of his estate; a minor to sell and convey his own land; and a trustee to sell under a power contained in a deed of trust. The general power of the legislature previous to the constitution of 1865 to authorize such sales by special modes must be taken as settled in this state.

III. It will be readily inferred from what is said in the opinions in these cases, that the authority by the legislature can go no further than to authorize the sale of the land of such persons as are under such disability as prevents them from exercising that right in their own names, unless it be for the satisfaction of legal charges upon the land or for the payment of debts, subject to which the title is held. *Cargile v. Fernald*, *supra; Hindman v. Piper*, *supra; Wilkinson v. Leland*, 2 Pet. 627; *Watkins v. Holman*, 16 Pet. 25. Probably no case can be found reported, which upholds a sale, made under authority of an act of the legislature, by which the person authorized, conveyed without his consent the land of another who was himself capable of transacting his own business except under circumstances above stated. On the contrary all the decisions, which speak at all on the subject, assert the contrary. Such a sale would be equivalent to depriving the owner of his property without due process of law, and would be violative of both the state and federal constitution. *Gannett v. Leonard*, *supra; Kneass'* *Appeal*, 31 Pa. St. 91; *Hindman v. Piper*, *supra.*

It is also held that ''an act, which would undertake to annul or alter a settlement, or disposition of prop-

erty lawfully made by deed, last will, or other means, would be void." Such an act would be retrospective in its operation. *Stewart v. Griffith, supra; Ervine's Appeal,* 16 Pa. St. 263. But persons *sui juris* may be estopped, by their acts and conduct, to deny the validity of such sales, or may ratify them, with the same effect as of other sales. *Kneass' Appeal, supra.*

The chief grounds upon which plaintiffs rely for defeating this sale is that Mrs. Williams, under the will of her husband, took by purchase a vested interest in the land, and the sale, if upheld, deprives her of her property without due process of law; and that the sale, if upheld, would have the effect of defeating the lawful provisions of the will of the testator. We do not think either objection can be sustained under the decisions of this court.

It will be observed, in the first place, that the testator did not make a settlement for the benefit of his wife and children, nor did he place any limitation on the power of his wife to alienate her interest in the land devised to her. The property to be affected by the act, was the absolute property of the devisees. There can be no doubt that, at any time before her remarriage, she could have conveyed her interest in this land, and could have applied the proceeds to the payment of her husband's debts, and thus reserved the negro girls from sale. The will left her at perfect liberty to do this. If she had conveyed her interest before her marriage, or afterwards, if done in the manner prescribed by the statute, her heirs could have made no claim thereafter. We think the sale in question effectuated the same purpose.

The respect which should always be accorded by the courts to the legislative department, justifies the presumption, especially after a period of thirty-five years, that the act was passed in the interest of the

beneficiaries, and, if they were of sufficient age and capacity to have discretion and judgment, that it was done at their instance. When this act was passed plaintiff's ancestor was one of the executors of the will, as well as one of the devisees, and was herself under no disability. The presumption ought to be indulged that the act was passed at the instance of the widow, whose rights were to be affected thereby. The act nowhere declares, nor does it appear therefrom, that the sale which it authorized was for the purpose of paying the debts of the estate, except that the power was conferred upon the executor, which is not at all conclusive. Now, as the widow was under no disability, and as the act was presumptively passed at her instance, she should not be allowed to dispute its validity. Doubtless had a sale been made previous to her marriage, she would have relinquished her right to the purchaser. When the sale was made, she was under the disability of coverture, and could only convey her land under the mode prescribed by the statute, and it was entirely competent, as has been seen, for the legislature to change the mode.

The evidence shows that the widow did not remain on the homestead with her family, as contemplated by the testator, but, we infer from the evidence, that she abandoned it prior to her marriage. The evidence shows, furthermore, that she retained in her possession the negro girls, and had the benefit of their services, and actually disposed of one of them. These facts are not stated with a view of applying the doctrine of estoppel to her, by acts done after her marriage, though such acts would certainly have estopped her, if *sui juris*, to dispute the sale, but these facts are stated with a view of showing, and we think they do show, that the act of the legislature was passed at her

instance, and that it is not necessary to rely on a presumption to establish the fact.

The act having been passed at the instance of plaintiff's ancestor, and she having been under disabilities when the sale and conveyance was made, we conclude that the sale was valid.  Judgment affirmed. All concur, except BARCLAY, J., absent.