# GROOME WHITTELSEY et al., Appellants, v. JAMES CONNIFF et al.

**Division Two, January 6, 1916.**

1. **MINOR: Sale of Land: By Curator Appointed Without Notice: Constitutional Right.**   When the Legislature as *parens patriae* takes from a minor the power to dispose of his property, and, through the instrumentality of the probate court and a curator, sells that property for his education and support, it does not deny to him the equal protection of the laws, but gives him the protection of laws especially designed for his protection; it does not take from him his property, but uses it for his benefit.   And the sale of a non-resident minor's land by a curator who was appointed by the probate court without notice to the minor of the application for such appointment, if otherwise done in harmony with the statute, which in 1879 did not require such notice, did not violate the provision of the Federal Constitution guaranteeing to him the equal protection of the laws, or the provision of the State Constitution declaring his property shall not be taken without due process of law.

2. **NON-RESIDENT MINOR: Over Fourteen Years: Choosing Curator.**   The General Statutes of 1865 did not give to a non-resident minor having real estate in this State, either under or over fourteen years of age, the right to choose his curator, or to have notice of the application for the appointment of a curator.

3. ————: **Curator: Interloper.** A person who has been appointed curator of the estate of a non-resident minor at the suggestion and upon the application of another who holds a power of attorney from the minor's mother and adult sister for the sale of their interests in the same lands, and who sold those interests to the same persons who purchased from the curator, cannot properly be characterized as an interloper.

4. ————: **Sale of Lands: Notice of Order of Sale.** The General Statutes of 1865 did not require that notice be given the minor of an application by the curator for an order of court to sell the lands of the minor.

5. **CURATOR: Resignation: No Formal Discharge: Sale by Subsequent Appointee.** Where the resignation of a duly appointed curator has been accepted by the probate court by an

order entered of record, the fact that he was not formally discharged will not affect a sale of the minor's land by a subsequent curator duly appointed.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*W. D. Isenberg* and *Crews & Cantwell* for appellants.

(1) The English and American authorities are numberless that the power of courts to divest an infant of his lands, whether the court deems it to his advantage or not, does not exist, in the absence of a statute. The decisions in Missouri so uniformly hold that it is unnecessary to cite authorities of other States. Heady v. Crouse, 203 Mo. 100; Young v. Downley, 150 Mo. 317; Capen v. Garrison, 193 Mo. 335. (2) This is particularly true in the case of a non-resident infant who owns a remainder in lands in this State. The State of Missouri has no power to direct his education, or to supervise his care and maintenance. If his property in this State be needed for his education and support, the courts of the State having power over the person of the infant should first be resorted to. This is the policy of the statute law. The enumeration in the statute of certain purposes for and conditions under which such sales of lands of infants may be made excludes all other purposes and conditions, and means that the land cannot be sold except within the terms of the statute. Capen v. Garrison, 193 Mo. 335; Blackburn v. Bolan, 88 Mo. 80. It is only when the statute expressly provides that lands of non-resident infants may come under the jurisdiction of the probate court that said jurisdiction

can exist. When such conditions are complied with, then all of the other requirements as to notice which are applicable to the estate of a resident minor and for his protection, should apply, with greater reason, to the estate of the non-resident infant. Notice of some sort, at some time or stage of the proceedings by which the property of an infant may be divested, is absolutely essential. It may be that a child of tender years is required to take notice of all that his curator may do after he knows who his curator is, but no case has ever yet held that any human being is bound by the acts of another of whose very existence he has had neither knowledge nor notice of any kind. Such a proceeding would violate the provisions of the State Constitution providing for due process of law, and would violate the provision of the Federal Constitution guaranteeing the equal protection of the laws. Jones v. Gore, 142 Mo. 45; Roth v. Gilbert, 123 Mo. 29; Clark v. Mitchell, 64 Mo. 564; Lemon v. Buchanan Board, 108 Mo. 241. (3) There was no jurisdiction to appoint the curator; there was no jurisdiction to order the sale or to confirm it. Cases above, and Carden v. Culberson, 100 Mo. 269.

*James Booth* for respondent, Owen McCourt.

(1) The appointment of O'Rourke as curator of the estates of the non-resident minors was expressly authorized by the statute then in force. Sec. 6, chap. 12, Wagner's Stat. 1872; Sec. 414, R. S. 1909. (2) The appointment was regular and fair on the face of the record, reciting every jurisdictional fact. Sec. 6, chap. 12, Wagner's Stat. 1872. (3) Under section 12, of said chapter, no notice was required of the application for the appointment of O'Rourke. Wallace v. Tinney, 145 Iowa, 478; Clark v. Cordis, 4 Allen, 466. (4) The application for the order to sell and the order sustaining it as well as the order of approval of sale, were all regular and good on the face of the rec-

ord. Sec. 28, chap. 66, Wagner's Stat. 1872. (5) Statutes authorizing the appointment of a curator of the estate of a non-resident minor who owns property within the jurisdiction of the court, are by no means unusual and are universally upheld by the courts of the State where in force. Wallace v. Tinney, 145 Iowa, 466; Woerner's Am. Law of Guardianship, sec. 28, pp. 87, 88; Tiffany's Persons and Domestic Relations, sec. 306, p. 158; Land Co. v. Kurtz, 45 Minn. 380; Davis v. Hudson, 29 Minn. 27. (6) The actions of the probate court in appointing O'Rourke curator and making its order of sale, together with its order approving that sale being fair and regular on the face of the record, is not the subject of collateral attack in this action. Hope v. Blair, 105 Mo. 93; Carr v. Spannagel, 4 Mo. App. 288; Frye v. Kimball, 16 Mo. 21; Overton v. Johnson, 17 Mo. 442; Ruggles v. Webster, 55 Mo. 246; Cox v. Boyce, 152 Mo. 582; Johnson v. Beasley, 55 Mo. 256; Rowden v. Brown, 91 Mo. 429; Noland v. Barrett, 122 Mo. 181; Smith v. Black, 231 Mo. 681; Robbins v. Boulware, 190 Mo. 33; Wilkerson v. Allen, 67 Mo. 502. (7) No notice of the curator's application for order of sale was required to give the court jurisdiction. Ancell v. Bridge Co., 223 Mo. 209. (8). The record showed that the proceeds of the sale were used for the education of the minors, and they are now estopped. They cannot in the same breath both accept and reject. Fisher v. Siekman, 125 Mo. 165. (9) The probate court was not required to expressly discharge Spencer before appointing O'Rourke. Spencer having paid over according to the court's order all the assets in his hands and his resignation having been accepted, coupled with the fact that the court afterwards appointed O'Rourke, shows by necessary implication that Spencer was discharged. Pattee v. Thomas, 58 Mo. 163; Henry v. McKerlie, 78 Mo. 416. (10) The law views with disfavor titles of

the ancient character of that claimed by appellants. Hubbard v. Slavens, 218 Mo. 615.

ROY, C.—This is a suit under section 2535 of our Revised Statutes to quiet title to lot 8, containing 146 acres, and lot 9, containing 90 acres, all in subdivision 10 of U. S. Survey 1897, except ninety-five acres described in the petition, all in Jefferson county.

Plaintiffs are the children of Charles C. Whittelsey, a lawyer of St. Louis, who died in March, 1875, the owner of all of said lots 8 and 9, and also the owner of lands in the city of St. Louis, and in St. Louis county outside of said city. His will was duly admitted to probate, by which he devised all his property to his wife, Anna G., for life, with remainder to his heirs. He left surviving him six children, who were also the children of said Anna G., and were all minors.

In July, 1875, while the widow and children were residing in St. Louis, Richard H. Spencer was duly appointed curator of said minors. The only personal assets he ever received of said minors was $324.52 each, on a policy of insurance on their father's life.

About June 27, 1878, Spencer tendered to the court his resignation as such curator, having duly published a notice of his intention to do so, and his resignation was by entry of record accepted by the court. There was no formal order of his discharge as such. His statements and vouchers show that he paid all the money in his hands to the mother of the minors for their education and support, all of which payments were approved by the court. Immediately after the appointment of Spencer as such curator, the mother and children removed their residence to Elkton, Maryland, where they resided until 1881, when they moved back to St. Louis. Lillian and Lucy died in 1886. The mother and Edith died in 1910.

On October 17, 1878, the widow executed a power of attorney to Phil V. Taylor of St. Louis to sell her interest in all of said lands; and on January 18, 1879, Alice G. Whittelsey, one of the children, who had then become of age, executed a similar power of attorney to Taylor.

On June 18, 1879, said Taylor filed in the probate court of St. Louis an application for the appointment of John F. O'Rourke as curator for the five children of Whittelsey who were still minors. That application stated that said minors Lucy and Iva were over fourteen years of age, and that Edith, Lillian and Groome were under fourteen years of age; that they resided out of this State and owned real estate in the City of St. Louis and in the counties of St. Louis and Jefferson. O'Rourke was thereupon appointed such curator and gave bond in $1500 in the estate of each of said minors.

On June 24, 1879, the curator filed a petition for an order to sell said lands for the education and support of said minors, stating therein that the personal estate of said minors had been exhausted in their education and support. The court ordered that the land be sold at private sale. On October 4, 1879, that order was renewed. There is no showing on the record of the probate court or otherwise that there was ever published or served on said minors any notice either of the application for the appointment of such curator, or of the petition for the order of sale of the land. Lot 8 was appraised at seventy-five cents an acre and Lot 9 at twenty-five cents an acre, in all $132. That appraisement was of the full value and not merely of the minors' interest therein. The minors' interests in those lots were sold under that order, and the sale was reported to, and approved by the court on January 10, 1880. That report contained the following:

"And Mrs. Ellen McNamee became the purchaser of so much of the land above described as being in the county of Jefferson, having made the highest offer that could be obtained for the same at the price of seventy-six 70/100 dollars, the same being over the appraised value of said minor's interest in said parcels of land, the tenant for life being forty-six years of age, and the appraised value of the whole estate in said lands being one hundred and thirty-two dollars."

On October 20, 1879, Phil V. Taylor under his powers of attorney executed two deeds to said Ellen J. McNamee, by one of which he conveyed the interest of the widow, Anna G. Whittelsey, in the Jefferson county land, in consideration of $97.80, and by the other he conveyed the interest of Alice G. Whittelsey for the consideration of $25.35.

On August 19, 1880, Ellen J. McNamee conveyed the 236 acres to defendant McCourt for a consideration of $600. On June 17, 1886, McCourt sold to James E. Shorb ninety-five acres of the land for a consideration of $125, it being the part excepted in the petition. On November 1, 1888, McCourt conveyed to defendant Conniff forty acres of the land in controversy for a consideration of $125. There is very little oral evidence as to the character of the land; but it does clearly appear that it lies on the Merimac river and overflows; that at the time of the curator's sale it was in woods and unfenced, and that very little of it was cleared at the time of the trial.

I. Appellants say that the sale of a minor's land by a curator who was appointed without any notice to the minor of the application for such appointment is a violation of constitutional law in two respects: First, that it violates the Federal Constitution by denying to him the equal protection of the laws; second, that it violates the State Constitution by taking

*Notice of Application for Appointment of Curator.*

his property without due process of law. There is one answer to be made to both those propositions: When the Legislature as *parens patriae* takes from a minor the power to dispose of his property, and, through the instrumentality of the probate court and a curator, sells that property for the purposes of his education and support, it does not deny to him the equal protection of the laws, but gives him the benefit of laws especially designed for his protection; it does not take from him his property, but used it for his benefit.

In 1820 Chief Justice PARKER in Rice v. Parkman, 16 Mass. 326, said:

"No one imagines that, under this general authority, the Legislature could deprive a citizen of his estate, or impair any valuable contract in which he might be interested. But there seems to be no reason to doubt that, upon his application, or the application of those who properly represent him, if disabled from acting himself, a beneficial change of his estate, or a sale of it for purposes necessary and convenient for the lawful owner, is a just and proper subject for the exercise of that authority. It is, in fact, protecting him in his property, which the Legislature is bound to do; and enabling him to derive subsistence, comfort, and education from property, which might otherwise be wholly useless during that period of life, when it might be most beneficially employed.

"If this be not true, then the general laws, under which so many estates of minors, persons *non compos mentis* and others, have been sold and converted into money, are unauthorized by the Constitution, and void. For the courts derive their authority from the Legislature, and it not being of a judicial nature, if the Legislature had it not, they could not communicate it to any other body. Thus, if there were no power to relieve those from actual distress, who had unpro-

ductive property, and were disabled from conveying it themselves, it would seem that one of the most essential objects of government, that of providing for the welfare of the citizens, would be lost.''

In Cochran v. Van Surlay, 20 Wend. (N. Y.) 365, the court said:

''But, as I have frequently had occasion to observe, an act of the Legislature which would have the effect to divest an individual of his property and transfer it to others for their own benefit, without compensation, or where there was no reason to suppose the person whose property was thus taken would be benefitted thereby, and contrary to the settled principles of law, would be void, as being against the spirit of our State Constitution, and not within the powers delegated to the Legislature by the people of this State. It is clearly, however, within the powers of the Legislature, as *parens patriae,* to prescribe such rules and regulations as it may deem proper for the superintendence, disposition and management of the property and effects of infants, lunatics, and other persons who are incapable of managing their own affairs.''

Cooley's Cons. Lim. (7 Ed.), pages 141 and 144, refers with approval to both those cases.

In Stewart v. Griffith, 33 Mo. l. c. 23, this court said:

'' The view which we have taken of the subject is expressly based upon the idea that the act is question directs only the management of the property of the infants, changing its form and directing its use for their own benefit. Had the act undertaken to appropriate their property to the use of any other person it would have been void, because 'retrospective in its operation' by destroying rights previously vested by law.''

Nothing was expressly said in any of those cases on the subject of notice to the minor of the application for the appointment of the curator.

The following authorities held that no such notice is necessary unless the statute requires it: 21 Cyc. 29; Kurtz v. Railroad, 48 Minn. 339; Kurtz v. Land Co., 52 Minn. 140; Shroyer v. Richmond, 16 Ohio St. 455; Mahan v. Steele, 109 Ky. 31; Packard v. Ulrich, 106 Md. 246; Wallace v. Tinney, 145 Iowa, 478. In the latter case it was said:

"But we do not think that either the statute or any rule of constitutional law requires the giving of notice of an application for the appointment of a guardian of the property of a non-resident. Surely our statute does not require any notice, and, if it be required, it must be in virtue of some general rule of law or constitutional requirement. Doubtless no guardian may be appointed for the person of another without notice, and this is what the cases for appellant seem to hold. Some of them perhaps go so far as to hold that notice must be given if the appointment is to be of a guardian for the property. But we are constrained to take a different view."

We observe that it is said in that case that some of the cases *perhaps* go so far as to hold that notice is necessary. A diligent search has failed to discover any case so holding, except those cases where the statute so required.

Those proceedings in the St. Louis Probate Court were had before Judge WOERNER who in his American Law of Administration, page 88, says that no notice to a minor is necessary unless called for by the statute.

Prior to our Constitution of 1865 the Legislature at every session passed numerous special bills for the sale of minor's lands. Few of them required any notice of any kind to the ward. Many of them failed

even to require a bond to secure the interests of the minor. In Gannett v. Leonard, 47 Mo. 205, it was held that such an act which did not require a bond was improvident legislation, but that it was not void. It further said:

"The power must be executed according to the statute; but the statute furnishes the rule by which we must judge of the legality of the transaction; and the dishonesty or subsequent misfortunes of the trustee, from which his beneficiaries suffer, should not be visited upon innocent purchasers when the statute has been followed."

In Garth v. Arnold, 53 C. C. A. 200, Judge THAYER said:

"Concerning this question it is only necessary to say that it may be conceded to be well settled in the State of Missouri that, prior to the adoption of its Constitution of 1865, it was competent for the General Assembly, acting as *parens patriae*, to authorize by special laws the sale of lands belonging to minors and persons *non compos mentis*. The power in question had been repeatedly exercised and upheld. Indeed, the doctrine was so well established by local decisions, and so many titles had been acquired on the faith thereof, as to constitute it a rule of property. [Stewart v. Griffith, 33 Mo. 13, 82 Am. Dec. 148; Gannett v. Leonard, 47 Mo. 205; Shipp v. Klinger, 54 Mo. 238; Cargile v. Fernald, 63 Mo. 304; Clusky v. Burns, 120 Mo. 567.] In one of these cases (Shipp v. Klinger) the Supreme Court of the State declined to go into the question of the right of the Legislature to exercise such a power, or to consider it as open for further discussion."

The Constitution of 1865 provided that the Legislature should not by special law authorize the sale of a minor's land, but did not limit its power to provide for such sale by general law.

266Mo.37

It is thus seen that when the statute is complied with the sale is valid.

The probate proceedings now under examination took place under the General Statutes of 1865. Section 3 of chapter 116 thereof provides that the court "shall appoint guardians to such minors under the age of fourteen years, and admit those over that age to choose guardians for themselves, subject to the approval of the court." Section 11 makes a similar provision for the appointment of a curator different from the guardian. Section 12 provides for the *appointment* of curators for non-resident minors, without any provision for a choice by the minor. Section 13 provides that a minor having a guardian or curator appointed by the court, may, upon attaining the age of fourteen years, choose another guardian or curator before the court *in the county of his residence.*

We think it clear that there is no choice of a curator given by that chapter to a non-resident minor. It may be, and probably is the case, that the statute giving the right of choice to a resident minor over fourteen years of age impliedly requires that he shall have notice in order that he may make such choice. We are not now deciding that point, but we do hold that in that chapter there is no provision that a non-resident minor, either under or over the age of fourteen years, shall have such choice or that he shall have any notice of the application for the appointment of his curator.

Appellants in their brief characterize O'Rourke as an "interloper." In that connection we have noticed that he was appointed at the suggestion of Phil V. Taylor, who was then the attorney in fact of the mother and adult sister for the sale of their interest in the same land, and who sold those interests to the same person who purchased from the curator, and at prices in harmony with the consideration paid the

curator. The interests of the minors were as well cared for as were those of the adults acting in their own right.

II. Appellants say that the sale is void because no notice was given of the application for an order to sell the land. They cite section 29 of chapter 116 of the General Statutes of 1865. We will not quote that section. It says nothing about how the order of sale shall be procured, but provides only that the sale shall be advertised and conducted as in case of sales made by executors and administrators for the payment of debts.

*Notice of Petition for Sale of Minor's Land.*

In Pattee v. Thomas, 58 Mo. 163, and in Ancell v. Bridge Co., 223 Mo. 209, it was held that no such notice was necessary because the curator represents the ward, and that the latter was in court through such curator.

III. The fact that no express formal order of discharge of Spencer as curator was ever made does not render void the subsequent appointment of O'Rourke. It is not necessary for us to hold that the acceptance of his resignation was, for all purposes, equivalent to a discharge.

*No Formal Discharge of Former Curator.*

In Cox v. Boyce, 152 Mo. 576, a curator was appointed in Lincoln County, the place of the minor's residence. Subsequently both curator and ward removed to Howell County where the same curator was again appointed as such by the probate court of that county, no discharge or resignation of the curator having ever been made or entered in Lincoln County. There was a sale of land of the ward situate in Lincoln County under proceedings in the probate court of Howell County. It was contended that those proceedings were *coram non judice* and void because of the

pre-existing curatorship. It was held that such original curatorship might have been sufficient cause in a direct proceeding to rescind the appointment in Howell County, but that such fact could not be shown in a collateral proceeding to annul the judgment of a court of competent jurisdiction. O'Rourke was a duly appointed curator and the sale made by him, valid in all other respects, cannot be thus collaterally assailed. The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court; *Faris, P. J.,* and *Walker, J.,* concur; *Revelle, J.,* not sitting.